IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 13-3253

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

FRED ROBINSON,

Appellant.

Appeal from the United States District Court
Eastern District of Missouri
District Court No. 4:11CR361-AGF

The Honorable Audrey G. Fleissig,
United States Judge, Presiding

**BRIEF OF APPELLANT**

DIANE DRAGAN
FELICIA JONES
Assistant Federal Public Defenders
1010 Market Suite 200
St. Louis, Missouri 63101
(314) 241-1255
ATTORNEYS FOR APPELLANT

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

Fred Robinson appeals the government's misapplication of 18 U.S.C. §666 in charges the district court itself declared were "not terribly well resolved" below (Sent-Tr. 72). The government witnesses confirmed the St. Louis Treasurer's Office from which Robinson allegedly took unearned pay was a county government office, and that he was not an employee of the city government that received the federal program money. In a "hail Mary" pass, the government wrongly admitted a City administrator's lay opinion that non-city government workers are agents of St. Louis City in the sense that they serve citizens within its borders. This misled the jury and failed to prove counts IV-VIII, as §666 only applies to agents of a "government or agency," receiving the federal grant. The court denied defense instructions clarifying that jurisdictional element by requiring that one must be an agent of the agency receiving the federal funds to violate §666.

Robinson also challenges the joint trial of dissimilar charges of wire fraud and theft of federal education funds from Paideia Academy with the Treasurer Office Counts and the use of warrantless GPS tracking evidence obtained without probable cause. Additionally, the government improperly excluded a black juror for grounds that applied equally to a white juror. The court erroneously imposed a prison term on Robinson for his failure to admit wrongdoing and wrongly imposed restitution. For these reasons, Robinson requests 20 minutes for argument.

Appellate Case: 13-3253    Page: 2    Date Filed: 02/12/2014 Entry ID: 4123542

# TABLE OF CONTENTS

**Page**

SUMMARY AND REQUEST FOR ORAL ARGUMENT ...............................................ii

TABLE OF CONTENTS ...................................................................................iii

TABLE OF AUTHORITIES ..............................................................................vi

JURISDICTIONAL STATEMENT ......................................................................x

STATEMENT OF ISSUES ................................................................................xi

STATEMENT OF THE CASE ............................................................................ 1

SUMMARY OF ARGUMENT ............................................................................ 8

ARGUMENT

1.    The trial court wrongly submitted Counts 4-8 to the jury, because:

      A.    The evidence did not show Robinson to be an agent or
            employee of the governmental entity receiving the
            jurisdictionally predicate $10,000 of federal benefits
            under §§666(a)(1)–(b). .................................................................. 11

      B.    No agency nexus existed between the Parking Division in the
            Treasurer's Office (a County agency) and the municipal Government
            led by the Mayor that received HUD grants for the Homeless.................... 19

      C.    §666(a)(1)(A) violates the Tenth Amendment as applied to Robinson
            for the allegedly fraudulent receipt of parking meter funds in a state
            created division of a county office based on federal homeless benefits
            granted to a separate municipal government for which he had no
            authority to act or other agency relationship ................................. 24

2.    The District Court erred in admitting a lay witness's legal opinion on the
      ultimate issue of whether the defendant was an agent of the City ......................... 28

Appellate Case: 13-3253     Page: 3     Date Filed: 02/12/2014 Entry ID: 4123542

3. The district court committed instructional error by

A. Refusing To Give Either Theory of Defense Instructions D or E that if the jury did not find Defendant to be an agent of the entity receiving federal funds, it must acquit him of Counts 4-8 ...........................32

B Denying Instruction C that to be an agent of the City, one must have authority to act on its behalf with respect to its funds, and instead giving instructions 22 and 15 that the federal funds requirement is proved by their mere receipt ........................................................35

4. The GPS Search Violated Robinson's Fourth Amendment Rights ......................37

5. The Court wrongly denied severance (a) to cure improper joinder of dissimilar crimes under Fed. R. Evid. 8(a) and (b) to avoid the prejudice the diverse proof and defenses posed in a joint trial under Fed. R. Evid. 14(a) ..........43

6. The District Court erroneously denied *Batson* challenges ......................................51

7. The Court based its choice of prison to punish Robinson on his failure to confess wrongdoing ................................................................53

8. The Court erroneously granted double-recovery in DESE's restitution award .......55

Appellate Case: 13-3253    Page: 4    Date Filed: 02/12/2014 Entry ID: 4123542

CONCLUSION ...................................................................................57

CERTIFICATE OF SERVICE .........................................................58

CERTIFICATE OF COMPLIANCE ................................................58

ADDENDUM ...................................................................................59

Appellate Case: 13-3253     Page: 5     Date Filed: 02/12/2014 Entry ID: 4123542

# TABLE OF AUTHORITIES

**CASES:**                                                                                       **Page**

## Supreme Court Cases

*Apex Hosiery Co. v. Leader*, 310 U.S. 469 (1940) .............................................................26

*Arizona v. Gant*, 556 U.S. 332 (2009) .............................................................................38

*Batson v. Kentucky*, 476 U.S.79 (1986).................................................................*passim*

*Brown v. Texas*, 443 U.S. 47 (1979).................................................................................40

*City of Indianapolis v. Edmond*, 531 U.S. 32 (2000) ......................................................40

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) .........................................................39

*Davis v. United States,*131 S.Ct. 2419 (2011) ................................................................37

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001) ......................................................39

*Fischer v. United States*, 529 U.S. 667 (2000) .........................................xi, 20, 21, 24, 25

*Gall v. United States*, 552 U.S. 38 (2007) ......................................................................53

*Jackson v. Virginia*, 443 U.S. 307 (1979) .......................................................................11

 *Katz v. United States*, 389 U.S. 347 (1967) ...................................................................39

*Miller-El v. Dretke*, 545 U.S. 231 (2005) .......................................................................52

*Richardson v. Marsh*, 481 U.S. 200 (1987) ....................................................................51

*Rita v. United States*, 551 U.S. 338 (2007) ....................................................................55

*Sabri v. United States*, 541 U.S. 600 (2004) ..................................................................23

*Salinas v. United States,* 522 U.S. 52 (1997) ............................................................19, 21

*Simmons v. South Carolina*, 512 U.S. 154 (1994) ..........................................................51

*Snyder v. Louisiana*, 552 U.S. 472 (2009) ................................................................xii, 52

*South Dakota v. Dole*, 483 U.S. 203 (1987) ....................................................................26

*Sullivan v. Louisiana*, 508 U.S. 275 (1993) ...................................................................35

*United States v. Bass,* 404 U.S. 335 (1971) ....................................................................24

*United States v. Comstock¸*130 S.Ct. 1949 (2010) ..........................................................24

*United States v. Jones*, 132 S.Ct. 945 (2013) ........................................................9, 38, 39

*United States v. Lopez*, 514 U.S. 549 (1995) ..................................................................24

*United States v. Raines*, 362 U.S. 17 (1960) ..................................................................24

*United States v. Sokolow*, 490 U.S. 1 (1989) .............................................................40. 41

## United States Court of Appeals Cases

*Christiansen v. Nat'l Sav. and Trust Co.*, 683 F.2d 520 (D.C. Cir. 1982) .....................32

*Closs v. Leapley*, 18 F.3d 574 (8th Cir. 1994) ................................................................49

*Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964) ......................................................49

*Gee v. Grouse*, 110 F.3d 1346 (8th Cir. 1997) ...............................................................52

Appellate Case: 13-3253     Page: 6     Date Filed: 02/12/2014   Entry ID: 4123542

*Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409 (8th Cir. 1987) ......................................30, 31

*Kahle v. Leonard*, 563 F.3d 736 (8th Cir. 2009) ..................................................................32

*Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828 (8th Cir. 1988) ..............28, 29

*Krueger v. State Farm Mut. Ins. Co.*, 707 F.2d 312 (8th Cir. 1983) ................................30

*Strew v. Dormire*, 557 F.3d 960 (8th Cir. 2009) ..............................................................23

*Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966) ..................................................54

*United States v. Abu-Shawish*, 507 F.3d 550 (7th Cir. 2007) ...................................16, 21

*United States v. Akers*, 987 F.2d 507 (8th Cir. 1993) .....................................................xi, 33

*United States v. Barrza-Maldonado*, 732 F.3d 865 (8th Cir. 2013) ..............................38

*United States v. Chalupnik*, 514 F.3d 748 (8th Cir. 2008) ..............................................56

*United States v. Davis*, 103 F.3d 660 (8th Cir. 1996) ......................................................49

*United States v. Dooley,* 580 F.3d 682 (8th Cir. 2009) ....................................................33

*United States v. Engleman*, 648 F.2d 473 (8th Cir. 1981) ..............................................44

*United States v. Esquivel*, 507 F.3d 1154 (8th Cir. 2007) ..............................................37

*United States v. Foutz*, 540 F.2d 733 (4th Cir. 1976)....................................44, 46, 49

*United States v. Frazier*, 651 F.3d 899 (8th Cir. 2011) ..................................................56

*United States v. Genova*, 333 F.3d 750 (7th Cir. 2003) ..............................................11, 18

*United States v. Garcia-Hernandez*, 530 F.3d 657 (8th Cir. 2008) ..............................55

*United States v. Garrett*, 648 F.3d 618 (8th Cir. 2011) ..................................................46

*United States v. Hines*, 541 F.3d 833 (8th Cir. 2008)......................................................23

*United States v. Inman*, 558 F.3d 742 (8th Cir. 2009) ....................................................11

*United States v. Jewell*, 614 F.3d 911 (8th Cir. 2010) ....................................................48

*United States v. Jones*, 245 F.3d 990 (8th Cir. 2001)...............................................*passim*

*United States v. Laca*, 499 F.2d 922 (5th Cir. 1974) .................................................xii, 54

*United States v. Lindsey,* 782 F.2d 116 (8th Cir. 1986) ..................................................43

*United States  v. Louper-Morris*, 672 F.3d 539 (8th Cir. 2012) ....................................56

*United States v. Medina-Cervantes*, 690 F.2d 715 (9th Cir. 1982) ..............................55

*United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227 (8th Cir. 1992) .................*passim*

*United States v. Moeller*, 87 F.2d 1134 (5th Cir. 1993) ..................................................22

*United States v. Moldanado*, 2012 WL 306026 (1st Cir. 2012) ....................................21

*United States v. Morgan*, 230 F.3d 1067(8th Cir. 2000) ................................................26

*United States v. Mothershed*, 859 F.2d 585 (8th Cir. 1988) .....................................47, 48

*United States v. Ness*, 665 F.2d 248 (8th Cir. 1981) ................................................*passim*

*United States v. Noel*, 581 F.3d 490 (7th Cir. 2009) ...................................................29, 30

*United States v. Peery*, 977 F.2d 1230 (8th Cir. 1992) .............................................*passim*

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2009) ..............................xii, , 21, 22, 36

*United States v. Randazzo*, 80 F3d 623 (1st Cir. 1996) ..............................xii, 43, 44, 45

*United States v. Reaves*, 2009 WL 3643476 (D. Neb. 2009) ........................................44

*United States v. Robaina*, 39 F.3d 858 (8th Cir. 1994) ...........................................43, 46

*United States v. Ruiz*, 412 F.3d 871 (8th Cir. 2005) ......................................................47

vii

*United States v. Santopietro*, 166 F.3d 88 (2nd Cir. 1999) ................................. 26
*United States v. Safirstein*, 827 F.2d 1380 (9th Cir. 1987) .............................. 55
*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009) ........................... 28, 30, 51
*United States v. Vitillo*, 2005 WL 1693932 (E.D. Pa. 2005) ....................... 18
*United States v. Westmoreland*, 841 F.3d 57 (5th Cir. 1998 ...................... 21
*United States v. Whitted*, 11 F.3d 782 (8th Cir. 1993) ............................. 30
*United States v. Whitehill*, 532 F.3d 746 (8th Cir. 2008) ..................... 33, 37
*United States v. Wyncoop*, 11 F.3d 1192 (9th Cir. 1993 ....................... 17

## FEDERAL DISTRICT COURT OPINIONS

*United States v. LaHue*, 998 F.Supp. 1182 (D. Kan. 1998) .......................... 25
*United States v. Ortiz*, 878 F. Supp. 2d 515 (E.D. Pa. 2012) ..................... 39
*United States v. Sunia*, 643 F.Supp.2d 51 (D.D.C. 2009) ...................... 23, 31
*United States v. Tateo*, 214 F.Supp. 560 (S.D. N.Y. 1963) ...................... 54

## UNITED STATES  CONSTITUTION PROVISIONS

U.S. Const. Amend IV ................................................................ xii
U.S. Const. Amend. X ............................................................... xi

## UNITED STATES STATUTES:

18 U.S.C. §666 ........................................................... 8, 11, 13
18 U.S.C. § 1343 ............................................................ x
18 U.S.C. §3663A ........................................................ xii, 56
28 U.S.C. § 1291 ........................................................... x

## FEDERAL RULES:

Fed R. Crim. P. 14(a) .................................................. 43
Fed. R. Evid. 404(b) .................................................. 48
Fed. R. Evid. 01(b) ................................................. 8, 28

## FEDERAL LEGISLATIVE HISTORY

S. Rep. No. 225, 98th Cong., 1st Sess. 370 (1983) .......................... 17, 22

Appellate Case: 13-3253     Page: 8     Date Filed: 02/12/2014 Entry ID: 4123542

**OTHER REFERENCES:**

Fifth Circuit Pattern Instruction No. 2.37 ........................................................ 36

**Missouri State Court Opinions**

*Preisler v. Hayden,* 309 S.W.2d 645 (Mo. 1958) ........................................... 14

**Missouri Statutes**

Mo. Rev. Stat. § 82.485.1 ........................................................................... 13, 15
Mo. Rev. Stat. §82-490 .................................................................................... 14
Mo. Rev. Stat. 570.030 ................................................................................... 24

Appellate Case: 13-3253     Page: 9     Date Filed: 02/12/2014 Entry ID: 4123542

## JURISDICTIONAL STATEMENT

Fred Robinson appeals the final judgment entered in the federal district court for the Eastern District of Missouri on September 17, 2013. He timely filed notice of appeal September 30, 2013. The government invoked the District Court's jurisdiction via indictments alleging one violation of 18 U.S.C. §§2 and 1343 and seven violations of §666. Though troubled by the government's charging, the court entered judgment convicting Robinson of all counts and imposed concurrent 24 month prison terms. Robinson invokes this Court's jurisdiction under 28 U.S.C. §1291.

Appellate Case: 13-3253    Page: 10    Date Filed: 02/12/2014 Entry ID: 4123542

# STATEMENT OF ISSUES

1.  The trial court wrongly submitted Counts 4-8 to the jury, because:

    A.  The evidence did not show Robinson to be an agent or employee of the governmental entity receiving the jurisdictionally predicate $10,000 of federal benefits under §§666(a)(1)–(b).

        *United States v. Peery*, 977 F.2d 1230 (8th Cir. 1992).

    B.  No agency nexus existed between the Parking Division in the Treasurer's Office (a County agency) and the municipal Government led by the Mayor that received HUD grants for the Homeless.

        *Fischer v. United States*, 529 U.S. 667 (2000)

    C.  §666(a)(1)(A) violates the Tenth Amendment as applied to Robinson for the allegedly fraudulent receipt of parking meter funds in a state created division of a county office based on federal homeless benefits granted to a separate municipal government for which he had no authority to act or other agency relationship.

        U.S. Const. Amend. X

2.  The District Court erred in admitting a lay witness's legal opinion on the ultimate issue of whether the defendant was an agent of the City.

    *United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227 (8th Cir. 1992)

3.  The district court committed instructional error by

    A.  Refusing To Give Either Theory of Defense Instructions D or E that if the jury did not find Defendant to be an agent of the entity receiving federal funds, it must acquit him of Counts 4-8.

        *United States v. Akers*, 987 F.2d 507 (8th Cir. 1993)

    (B)  Denying Instruction C that to be an agent of the City, one must have authority to act on its behalf with respect to its funds, and instead

giving instructions 15 and 22 that the federal funds requirement is proved by mere receipt thereof and nothing more.

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2009)


4.      The GPS Search Violated Robinson's Fourth Amendment Rights.

        U.S. Const. Amend IV

5.      The Court wrongly denied severance (a) to cure improper joinder of dissimilar crimes under Fed. R. Evid. 8(a) and (b) to avoid the prejudice the diverse proof and defenses posed in a joint trial under Fed. R. Evid. 14(a).

        *United States v. Randazzo*, 80 F3d 623 (1st Cir. 1996).

6.      The District Court clearly erred in overruling Robinson's *Batson* challenges.

        *Snyder v. Louisiana*, 552 U.S. 472 (2009)

7.      The Court improperly based its choice of prison to punish Robinson on his failure to confess wrongdoing

        *United States v. Laca*, 499 F.2d 922 (5th Cir. 1974)

8.      The Court erroneously granted double-recovery in DESE's restitution award.

        18 U.S.C. §3663A

Appellate Case: 13-3253      Page: 12      Date Filed: 02/12/2014 Entry ID: 4123542

# STATEMENT OF THE CASE

In the course of investigating allegations of corruption in the St. Louis Treasurer's office, federal agents used rumors and innuendo about Fred Robinson from recently terminated Treasurer's Office employees (without a warrant or reasonable suspicion) to place a GPS Tracker on Robinson's vehicle to track his whereabouts between January 22 through March 17, 2010 (4-12-2012-Hearing 45-46; Tr-Vol-6 22-23). Their investigation revealed he spent his days at a St. Louis charter school called Paideia Academy, on whose board he served (*Id*. at 9-10). After further investigation, the government believed Robinson diverted funds from the school to renovate a building on West Florissant with the intent to operate a for-profit early childhood education center. Additionally, the government's evidence suggested that Robinson was submitting false Treasurer's Office timesheets for work he was not performing (Tr-Vol-5 40, 41, 53, 157-61).

The government indicted Robinson with these two separate fraudulent schemes in a single indictment. In relation to the "Paideia scheme" he was charged with one count of wire fraud and two counts of Federal Program Theft. In the "Treasurer Office scheme" Robinson was charged with five counts of Federal Program Theft under 18 USC §666, one count for each year of his employment between 2006 and 2010.

This case wound a tortured path from the initial indictment in September of

1

2011 through three successive indictments over the span of a year. None of the superceding indictments added charges. Rather, each attempted to overcome jurisdictional deficiencies. The original indictment alleged Robinson violated §666 by virtue of being an agent of the Treasurer's Office which received federal funds in excess of $10,000 through contracts with the United States District Court and United States Bankruptcy Court (DCD#29-12). After the defense pointed out Federal Program Theft actually required proof of a "federal program" versus a business contract, the government superseded (DCD#58).

The First Superseding Indictment filed February 23, 2012 alleged that Robinson was an "agent of an organization, that is, the City of St. Louis as an employee of the Treasurer's Office" and said organization received in excess of $10,000 through "grants from the United States Department of Housing and Urban Development" (*Id.*). The defense moved to dismiss for lack of subject matter jurisdiction arguing that the Treasurer's office was not a subdivision or branch of the St. Louis City government but an independent elective office which received no federal funds. (DCD#66) The government argued that under §666 an "agent" includes "a servant or employee" and indicated that they would prove at trial that Robinson was an employee of the City of St. Louis and therefore an agent. (DCD#72 at 2; DCD#101 at 5)

On October 3, 2012, the government filed its Second Superseding

Appellate Case: 13-3253   Page: 14   Date Filed: 02/12/2014 Entry ID: 4123542

Indictment and recast its agency language to charge Robinson with "being an agent of a local government, that is, the City of St. Louis as an employee of the Treasurer's Office" (DCD#127). The day before trial the government obtained a Third Superseding Indictment on October 18, 2012 alleging that Robinson was "an agent of a local government, that is, the City of St. Louis" and removed all references to Robinson's employment with the Treasurer's office. (DCD#168). Motions for dismissal, severance and suppression were filed and denied after each successive indictment (Addendum 50-119).

All trial witnesses confirmed that Parking Division employees, including Robinson, are not employees of the City of St. Louis government (Tr-Vol-5 70, 109, 110, 135; Vol-6 142-43; Add. 122-23). The Treasurer's office has its own payroll, its own employees, and its own code of conduct (Tr-Vol-5 70, 110, 135). As an hourly, per performance employee in the Parking Division, Robinson did not qualify for or receive city benefits (Tr-Vol-4 224, Vol-5 60, 72).

In none of the charged years did the Treasurer's Office apply for or receive federal benefits within the meaning of §666(b) (Tr-Vol-5. 79-80). The Treasurer's Office employee salary was paid for by the money generated from parking meters, parking garages, and parking tickets and not by City of St. Louis taxes (T-Vol-5 79-80, 110; Vol-6 144; Add. 124). Treasurer's Office employees are not civil servants of the City of St. Louis government, and do not sign the City

3

government's Employee Code of Conduct (Tr-Vol-5 14, 70, 104).

When the government failed to prove that Robinson was an employee of the City of St. Louis, they attempted instead to prove he had the "authority to act on behalf of the City of St. Louis" and that he was an "agent" of the City of St. Louis via his purported "no show" job at the County Treasurer's office (Tr-Vol-6 163; Add. 126). The government did not present any actual evidence that Robinson had authority to act on behalf of the City of St. Louis. Rather, the government elicited, over objection, the lay opinion of the Human Resources Director for the City of St. Louis, Richard Frank, that a Parking Division Employee in the Treasurer's Office constituted an "agent" of "the City of St. Louis." (*Id.*). Frank hypothesized that since the work of the Parking Division employees served the citizens living in the city of St. Louis, their actions were authorized on behalf of the city and hence they could be considered an "agent" of the City of St. Louis. (Tr-Vol-6 156, 163; Add. 126) Frank was permitted to testify that an "agent" is someone who works on behalf of someone, for some entity. (*Id.* at 163; Add. 126) When asked to clarify what he meant by individuals working "on behalf of the City of St. Louis" he clarified that he was referring to "the boundary and all the citizens encompassed in the City of St. Louis" not the "City of St. Louis" government headed by Mayor Slay. (Tr-Vol-6 165; Add. 127). The government presented no other evidence of agency. Nor did they show any nexus between Robinson's employment and the

4

federal program funds received through Mayor Slay into the Department of Human Services for the homeless. All evidence at trial proved the federal funds were properly utilized and never placed in jeopardy by any action of Robinson.

The government joined these counts, for which they had no jurisdiction, with three unrelated counts of fraudulent conduct occurring at the Paideia Academy.

The majority of the evidence and witnesses at trial related to the "Paideia scheme". The criminal allegations hinged on whether a building financed by school funds could be leased to a for profit feeder school for pre-kindergarten children. The government argued Robinson concealed from the other two board members that the "Little People's Academy" would be run by Paige C. Investments, a company he created with Latasha Paige and through which he unsuccessfully bid to buy the same property in 2008 to develop an independent day care (Tr. Vol. 2, pp. 52-53, 140, 166-67, Vol. 3, pp. 55-60, 62-63; Vol. 4, pp. 26-32, 44, 119-23, 128, 141-44, 148-49, 161-65; 3-20-2013-Tr. 19). They also presented evidence that federal funds could not be used for prekindergarten students and that Robinson's use of the funds for renovation was in violation of the Academy bylaws and presented a conflict of interest (3-19-2013-Hay-Tr. 13, 23-24; 3-20-2013-Tr. 3-9, 26)   The government introduced an April 2009  Board Resolution pledging $150,000 to the Little People's Academy to develop an independent daycare as a preparatory feeding school (Tr-Vol-2 138, 140), with

Appellate Case: 13-3253   Page: 17   Date Filed: 02/12/2014 Entry ID: 4123542

which Robinson bought the 4028 West Florissant property on behalf of Paideia (Tr-Vol-3 67-70).  It was purchased with a $22,333 cashier's check from Paideia's revolving account on September 10, 2009 (Tr-Vol-2 142-43).  Numerous invoices were introduced showing Select Construction Services received payments for renovation to the building (Tr-Vol-2 142-51).

Several government witnesses supported Robinson's good faith in pursuing a pre-kindergarten daycare, the lack of which posed an obstacle to the higher academic scores the school's sponsor demanded (Tr-Vol-2 51, 62-64, 84, 123; 3-20-2012-Tr. 49-51; Tr-Vol-6. 89; Tr-Vol-7 2-3, 24-25, 64-65).  The outside consultant most involved with Paideia told Robinson he could not definitively state whether it was legal for a non-profit charter school to lease property to another entity for purposes of a day-care (3-20-2013-Tr 91-92), a question that Paideia's auditor also could not answer (*id*. at 168).  Ultimately, Paideia lost its charter and closed.  The renovations were not completed and the building was never occupied. (3-20-2013-Tr 51, 75, 91, 92, 160; Tr-Vol-4, p. 134, 179)  No money ever went to Robinson or any company owned by Robinson.

The district court denied Robinson's challenge to the exclusion of black Juror 26 as unemployed despite the government's retention of Juror 7, whom the jury sheet also indicated was unemployed (Tr-Vol-1 169, 175). The court denied appropriate theory of defense instructions (Tr-Vol-7 7-8) and submitted

instructions stating the mere receipt of federal funds satisfied the jurisdictional

element in §666(b) (Tr-Vol-7 4, 24, 34).  After the jury convicted on all counts, the

Court imposed concurrent prison terms of 24 months citing Robinson's failure to

admit wrongdoing even if it did not fit §666 and improperly ordered restitution

(Sent.Tr. 74-75).

Appellate Case: 13-3253     Page: 19     Date Filed: 02/12/2014 Entry ID: 4123542

# SUMMARY OF ARGUMENT

1. 18 U.S.C. §666(b) requires that "[t]he defendant must be an agent or employee of the government or agency that receives the federal funds that provide the basis for federal jurisdiction." *United States. v. Peery*, 977 F.2d 1230, 1232 (8th Cir. 1992). The evidence proved Robinson was an employee of the Parking Division in the Treasurer's Office (a county agency), whose wages state law mandated to come solely from parking meter revenue. Government witnesses established he was not a city employee or agent of the municipal government that received Federal HUD grants to serve the homeless. The government urged the jury to convict Robinson by reasoning he constituted an agent as a public servant working in "the boundaries" of St. Louis City for its "citizens". The residents of a city do not constitute an "organization, government, or agency" receiving federal funds required by §666(b). No nexus exists between the state-created Parking Division in the Treasurer's Office and the municipal government which received the federal money. As applied to Robinson, §666(a)(1)(A) violates the Tenth Amendment by intruding on the reservation of general police authority to state law.

2. The government misled the district court to allow Richard Frank's lay opinion on the ultimate issue of whether Robinson was an agent of the City, contrary to Fed. R. Evid. 701(b). Egregious prejudice resulted because the opinion

8

employed a non-statutory definition that failed to satisfy the agency required for conviction under §666(a)-(b), yet on which the government based five counts.

3. The district court failed to submit a theory of defense instruction that the jury must acquit if it found Robinson not to be an agent of the Human Services Department (Instruction D) or an agent of the entity receiving federal funds (Instruction E). Both accurately stated the law with evidentiary support. Robinson had a dire need for these instructions against the government's misleading argument that his county employment made him an agent of the "City of St. Louis" in the non-statutory sense of the citizens of St. Louis City. The district court similarly erred in submitting Instructions 15 and 22 that if they found that the City of St. Louis received federal funds exceeding $10,000 that jurisdictional requirement was satisfied without any further finding. These instructions fed the government's mistaken contention that public servants serving the boundaries and citizens of St. Louis city constitute agents under §666.

4. The government used GPS tracking evidence it collected from Robinson's car without a warrant contrary to *United States v. Jones*, 132 S.Ct. 945 (2013), to prove all its charges. No "special need" or exigency justifies a reasonable suspicion exception to the warrant requirement for covert GPS tracking. The District Court mistakenly ruled reasonable suspicion supported use of GPS, relying on a case abrogated by *Jones*.

9

5. The Court wrongly denied severance to cure improper joinder of two sets of charges alleging disparate and dissimilar crimes under Fed. R. Evid. 8(a), the first three counts alleging executive misconduct in the operation of a Charter School through efforts to establish a pre-school daycare, whereas the remaining five counts alleged he did nothing as a low-level, non-supervisory hourly worker in the Parking Division. Robinson deserved severance under Fed. R. Evid. 14(a) to prevent the prejudice posed by requiring a single jury to simultaneously decide his guilt of such disparate criminal conduct.

6. The district court wrongly denied the *Batson* challenge to the exclusion of black Juror 26 for being unemployed given the government's retention of white Juror 7, also unemployed.

7. The district court chose a prison term based on Robinson's failure to admit wrongdoing, a punishment for exercising his Fifth Amendment privilege.

8. The court wrongly granted a windfall to DESE by ordering restitution for funds it confirmed to have been spent on the educational materials DESE intended.

Appellate Case: 13-3253    Page: 22    Date Filed: 02/12/2014 Entry ID: 4123542

# ARGUMENT

1.        The trial court wrongly submitted Counts 4-8 to the jury on evidence that did not prove Robinson was an agent of the government receiving federal benefits under 18 U.S.C. §666(a)(1) –(b).

This Court reviews challenges to the sufficiency of evidence in the light most favorable to conviction, and asks whether a rational trier of fact could have found each essential element beyond a reasonable doubt. *United States v. Inman*, 558 F.3d 742, 748 (8th Cir. 2009). This standard does not authorize affirmance based on a view of the statute that omits elements Congress set for conviction. *United States v. Genova*, 333 F.3d 750, 757-758 (7th Cir. 2003)

Due process demands that the government establish beyond a reasonable doubt each element of an offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). 18 U.S.C. §666, entitled "Theft or bribery concerning programs receiving Federal Funds," provides:

    (a)    Whoever, if the circumstance described in subsection (b) of this section exists-

                (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof-

                (A)    embezzles, steals, obtains by fraud, … property that –

                        (1) is valued at $5,000 or more, and

                        (2) is owned by, or is *under the care, custody, or control of <u>such</u> organization, government or agency. . .*

Appellate Case: 13-3253   Page: 23   Date Filed: 02/12/2014 Entry ID: 4123542

Shall be fined under this title, imprisoned not more than 10 years or both.

(b)     The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

Congress specially defined particular terms, including the meaning of "agent":

the term "agent" means a person *authorized to act on behalf of* another person or *a government* and*, in the case of an organization or government*, includes a servant or employee, and a partner, director, officer, manager, and representative.

§666(d)(1) (emphasis added).  "To violate this statute, *the organization from which the funds were stolen* must receive 'benefits in excess of $ 10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.'" *United States v. Peery*, 977 F.2d 1230, 1232 (8th Cir. 1992).  "The defendant must be an agent or employee of the government or agency that receives the federal funds that provide the basis for federal jurisdiction."  *Id.*

The evidence presented at trial conclusively proved the agency that employed Robinson was the Parking Division, a fee office under the control of the St. Louis Treasurer's office headed by elected Treasurer, Larry Williams (Tr-Vol-6 142-44; Add. 122-24).  The Treasurer's Office is established by the Missouri legislature as a "county" government office and all employees in the Parking Division are county employees (*Id.*; Tr-Vol-5 110-111).  *See* Mo. Rev. Stat. §

Appellate Case: 13-3253     Page: 24     Date Filed: 02/12/2014 Entry ID: 4123542

82.485.1  In contrast, the evidence at trial conclusively established the federal funds at issue were received by the Department of Human Services, an agency under the municipal city government headed by Mayor Slay (Tr-Vol-5 235). Hence the government failed to prove Robinson was a "servant, employee, partner, director, officer, manager, or representative" of the "organization, government, or agency" that received the $10,000 in Federal program benefits or that he stole property "under the care, custody, or control of *such* organization, government, or agency".  18 U.S.C. §666(a)-(b) (emphasis added).  Every witness confirmed that Parking Division workers, like all Treasurer's Office hires, are county employees, not municipal employees of St. Louis City, the government that received and disbursed Federal Program benefits for the homeless. (Tr-Vol-5 110-11, 235; Vol-6 142-45, 168, 170, 173; Appx-Ex48-A-E).

Prior to trial, the government insisted that "agency" included any city employee even those with no access, control or ability to bind the city of St. Louis. (August 31, 2012 Tr. 52).  It  proffered that its trial evidence would show Robinson was an employee of the City of St. Louis and hence an agent thereof and that the court should not dismiss the case in advance of trial. (DCD#192 6-7)  This prediction, however, failed.   The government's witnesses confirmed that Parking Division employees, including Robinson, are not employees of the City of St. Louis government – the only entity the government proved received federal benefits

Appellate Case: 13-3253     Page: 25     Date Filed: 02/12/2014 Entry ID: 4123542

exceeding $10,000 in the years charged in Counts 4-8 (Tr-Vol-5 70, 109; Vol-6 142-43; Add. 122-23). The Treasurer's Office exists by virtue of state Statute, and not as a subdivision or branch of the municipal government established by the City Charter (Tr-Vol-5 70, 110, 135). *See also* Mo. Rev. Stat. §82-490 (fixing salary and elected term of City Treasurer). The Treasurer's office has its own payroll, its own employees, and its own code of conduct (Tr-Vol-5 70, 110, 135).

The Treasurer's Office employee salary was paid for by the money generated from parking meters, parking garages, and parking tickets and not by City of St. Louis taxes (T-Vol-5 79-80, 110; Vol-6 144). Treasurer's Office employees are not civil servants of the City of St. Louis government, and do not sign the City government's Employee Code of Conduct (Tr-Vol-5 14, 70, 104). At no time during the years in the Indictment did the Treasurer's Office apply for or receive federal benefits within the meaning of §666(b) (Tr-Vol-5. 79-80).

Because St. Louis City does not exist within the geopolitical boundaries of any Missouri county, the offices providing county services for cities not located within Missouri counties constitute "county offices" even within the City of St. Louis, including the Recorder of Deeds Office, the Circuit Clerk's office, the Sheriff's office, and the Circuit Attorney's Office (Tr-Vol-6 142; Add. 122). *See Preisler v. Hayden,* 309 S.W.2d 645 (Mo. 1958) (St. Louis officers performing state government functions provided by county offices in cities that exist within

14

counties "are in no sense municipal officers" of the City of St. Louis). The state legislature separately established other "county offices," including the St. Louis Treasurer's Office (Tr-Vol-6 110-111, 142-43; Add. 122-23). Some of these county offices constitute "fee offices" that generate their own funds, rather than relying on budgets reviewed by the Board of Estimate and Apportionment, the controlling fiscal body for the City of St. Louis under the City Charter. (Tr-Vol-6 143-144, 148; Add. 123-24). These offices include the statutorily mandated responsibility of "[t]he treasurer of any city not within a county … [to be] supervisor of parking meters." Mo. Rev. Stat. § 82.485.1 (Tr-Vol-5 110-111).

During a mid-trial renewed motion for severance, the government learned for the first time that the defense intended to call Human Resources Director for the City of St. Louis, Richard Frank, to testify conclusively that Robinson was not an employee of the city. (Tr-Vol-5 3-10) After promising the court in pretrial pleadings and telling the jury that the government would prove Robinson was a city employee, the government was forced to abruptly change their entire theory of prosecution. (Tr-Vol-1 207-09) It was then the government attempt to contort the definition of "agent" by trying to prove Robinson had the "authority to act on behalf of the City of St. Louis" via his purported "no show" job at the County Treasurer's office. The government did not present any actual evidence that Robinson had authority to act on behalf of the City of St. Louis as an agent of the

15

City. Rather, the government resorted to eliciting the lay opinion of Frank, that a Parking Division Employee in the Treasurer's Office constituted an "agent" of "the City of St. Louis." (Tr-Vol-6 163; Add. 126). Frank hypothesized that since the work of the Parking Division employees served the citizens living in the city of St. Louis, their actions were authorized on behalf of the city and hence they could be considered an "agent" of the City of St. Louis. (Tr-Vol-6 156, 163; Add. 126) Frank was permitted to testify that an "agent" is someone who works on behalf of someone, for some entity. (*Id.* at 163) When asked to clarify what he meant by individuals working "on behalf of the City of St. Louis" he clarified that he was referring to "the boundary and all the citizens encompassed in the City of St. Louis" not the "City of St. Louis" government headed by Mayor Slay. (Tr-Vol-6 165; Add. 127).

Assuming for argument's sake the admissibility of Frank's lay opinion (see Point 2, *infra*), the citizens living within the geopolitical boundaries of the "City of St. Louis" do not constitute a "government or agency" receiving the prerequisite Federal program money to constitute a violation of §666. "In short, . . . there must be an individual who acts as an agent of *an organization*, the individual must have unlawfully obtained funds from this organization, and the organization must receive over $10,000 in federal funds in any one year period." *United States v. Abu-Shawish*, 507 F.3d 550, 556 (7th Cir. 2007) (emphasis added); *accord United*

16

States v. Peery, 977 F.2d at 1232; *United States v. Wyncoop*, 11 F.3d 119, 122 (9th Cir. 1993). As this Court noted, the statute's legislative history emphasized that, "[f]or Section 666 to apply, 'there must exist a specific statutory scheme authorizing the Federal assistance [to the organization from which money was stolen] in order to promote or achieve certain policy objectives.' S. Rep. No. 225, 98th Cong., 1st Sess. 370 (1983)." *Peery*, at 1232. The citizens living within the boundaries of St. Louis City plainly do not constitute an "organization, government, or agency" within the meaning of §§666(a)(1) and 666(b).

The Indictment itself charged Robinson with "being an agent of a local government, that is, the City of St. Louis" (DCD#168). This required the government to prove Robinson was an agent of the City of St. Louis municipal government, the agency which received the federal funds. Congress specifically defined "government agency" as

> "a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program."

§666(d)(2). The municipal "government" established by the City Charter for the City of St. Louis does not consist of the amorphous group of all citizens living within its geographic borders. True, that population may be "served" by several and distinct offices of state, county, and municipal governments, but the City's

17

residents themselves do not constitute an organization, government or agency under §§666(a)(1) –(b).  The fact that separately elected government entities serve a common population  does not make each independent governmental unit's employees agents of some all-encompassing "local government, that is, the City of St. Louis" as charged in the Indictment.

The existence of an agent's authority to act on behalf of the "organization, or government, or office" receiving benefits constitutes the essence of the agency requirement for §666.  *See, e.g., United States v. Peery*, 977 F.2d at 1232; *United States v. Vitillo*, 2005 WL 1693932, *4 (E.D. Pa. 2005).  The standard of review entitles the government to a view of the evidence in the light most favorable to conviction, but that standard does not authorize a redefinition of the plain elements beyond those Congress chose in defining the offense.  *See United States v. Genova*, 333 F.3d 750, 757-758 (7th Cir. 2003).   The government explicitly urged the jury to rely on Frank's contention that Robinson acted as an "agent" of the City of St. Louis because his work made him "a public servant that served the City of St. Louis."  (Tr-Vol-7 54).  This argument plainly urged conviction based on facts that did not establish a violation of §666(a)(1)(A) and (B).  After acceding to the government's demands to pursue this eccentric theory, the court expressed its own concerns at sentencing about "[w]hether all of these charges appropriately fit in the confines of the Federal statute. . .[.]" (Sent Tr. 73).

Appellate Case: 13-3253     Page: 30     Date Filed: 02/12/2014 Entry ID: 4123542

B.  No agency nexus existed between the Parking Division in the St. Louis Treasurer's Office (a County agency) and the municipal Government led by the Mayor that received HUD benefits.

Congress did not enact §666 to provide a federal police power rooting out embezzlement or bribery of purely local offices or property.  "Without an agency relationship to the recipient of federal funds, Section 666 does not reach the misconduct of local officials."  *United States v. Philips*, 219 F.3d 404, 413 (5th Cir. 2000).  The Supreme Court's opinions about §666 each acknowledge that the statute cannot be used to make a federal crime of fraud by persons who were not agents of the government receiving federal benefits.  In *Salinas v. United States,* the Court cited Congress's intent to reach theft by and bribery of nonfederal employees as agents of local government agencies that receive benefits from federal programs.  522 U.S. 52, 54 (1997).  The legislative history explicitly sought to reach bribes offered to state and local officials "employed by agencies receiving federal funds," but the Court left open the possibility that the statute might require "some other kind of connection between a bribe and the expenditure of federal funds" in other contexts.  *Id*. at 59.  No need existed to specify that connection in *Salinas*, whose bribery related to housing prisoners in facilities funded by federal money.  *Id*.

The Court rejected the government's claim two years later that any person or entity that receives money originating in a federal program qualifies as a recipient

Appellate Case: 13-3253   Page: 31   Date Filed: 02/12/2014 Entry ID: 4123542

of such benefits for purposes of §666(a)(1) and (a)(2). *Fischer v. United States*, 529 U.S. 667, 676,-677 (2000). Fischer challenged convictions for fraud and bribery relating to a loan he negotiated from a municipal agency that operated two hospitals that participated in the Medicare program, and kickbacks he paid from the loan's proceeds to the agency's officer. *Id*. at 669-70. Fischer argued that the municipal agency involved in his fraud and bribery was not a recipient of federal payments because Medicare provides benefits to the elderly and disabled rather than to the health care organizations that serve them. *Id*. at 676-77. The Court rejected Fischer's argument, "but without endorsing the Government's broader position" that the Federal source of any funds brings within the statute's scope anyone who receives the benefits. *Id*. at 677. It cautioned:

> ***Our discussion should <u>not</u> be taken to suggest that federal funds disbursed under an assistance program will result in coverage of all recipient fraud under §666(b).*** Any receipt of federal funds can, at some level of generality, be characterized as a benefit. The statute does not employ this broad, almost limitless use of the term. ***Doing so would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance.***

*Id*. at 581 (emphasis added).

In contrast to Fischer's facts, the Parking Division within the County office of Treasurer receives *no* federal program money or benefits (Tr-Vol-5 79-80). Nor are Parking Division employees members of the municipal government headed by the St. Louis Mayor and established by the City Charter (Tr-Vol-6 141-43; Add.

Appellate Case: 13-3253    Page: 32    Date Filed: 02/12/2014 Entry ID: 4123542

121-123).  The federal benefits the government relied on here came from a grant awarded to and authorized by  HUD to provide low-income housing  (Tr-Vol-6 169-71; Appendix-Ex48A-E).  Parking Division employees perform no services related to housing or homeless assistance.

Congress focused on preventing "a threat to the integrity and proper operation of the *federal* program."  *Salinas v United States*, 522 U.S. 52, 61 (1997) (emphasis added).  Congress did not intend the statute to "encompass every local bribery."  *Fischer*, 529 U.S. at 581; *United States v. Westmoreland*, 841 F.3d 57, 578 (5th Cir. 1998). "Thus, we said that Section 666 'was designed to extend federal bribery prohibitions to bribes offered to *state and local officials employed by agencies receiving federal funds*.'"  *Salinas,* 522 U.S. at 58.  *See also Peery*, 977 F.3d at 1232; *United States v. Moldanado*, 2012 WL 306026, at *6 (1st Cir. 2012) ("Congress  did not intend to criminalize an act that does not implicate the integrity of federal funds", *citing United States v. Abu-Shawish*, 507 F.3d 550, 557 (7th Cir. 2007) ( *United States v. Phillips*, 219 F.3d 404, 411 (5th Cir.2000).

 The lack of connection between Robinson as a Parking Division worker in the Treasurers Office and the municipal government that received and disbursed Federal Program money for the homeless precluded a finding that he was an agent of the "organization, government, or agency" receiving Federal program money prerequisite to federal jurisdiction under §666(b).   In a very similar case, the Fifth

21

Circuit concluded that an elected Tax Assessor in Louisiana who hired "ghost employees" and took kickbacks was not an agent of the local parish government that received and disbursed federal food stamp benefits in the same jurisdiction. *United States v. Phillips*, 219 F.3d at 407. The parish government had no power, authority or control over the assessor's duties or job, and, likewise, Phillips had no ability to control or administer employees or programs or funds of the parish, nor any legal authority to bind the parish government. No relationship existed between the food stamp office within the parish government and the elected assessor's office. "In sum, because Phillips, as a matter of law, was not an employee or officer of the parish and because he was not authorized to act on behalf of the parish with respect to its funds, Phillips' actions did not and could not have threatened the integrity of federal funds or programs." *Id*. at 413.

The government mistakenly led the district court to conclude that because §666 requires no proof that a bribe involved or actually affected the federal program funds, the statute also required no proof that the defendant had the authority to act on behalf of the "organization, government, or office" receiving that money (Tr-Vol-6 187-188). To the contrary, the existence of that agency defines the basis for Congress's constitutional authority to enact this statute and constitutes an explicit statutory element. *Peery,* 977 F.2d at 1232 (paraphrasing S. Rep. 225, 98th Congress, at 369); *United States v. Moeller*, 87 F.2d 1134, 1137

Appellate Case: 13-3253    Page: 34    Date Filed: 02/12/2014 Entry ID: 4123542

(5th Cir. 1993); *United States v. Sunia*, 643 F.Supp.2d 51, 64 (D.D.C. 2009) (the integrity of federal program funds may only be threatened by an agent of the agency receiving them).

The rulings of this Court do not hold otherwise. In *United States v. Hines*, 541 F.3d 833 (8th Cir. 2008), this Court reiterated its earlier ruling that §666(a)(1)(B) did not require a showing that bribes involved or impacted federal program money. *Id*. at 835-36. Hines did not argue he was not an employee or agent of the government that received the Federal funds relied on for his prosecution. Neither the district court, nor this one, is bound by an implicit resolution of an issue that was neither raised by the parties in the case nor discussed by the panel. *Strew v. Dormire*, 557 F.3d 960, 964-65 (8th Cir. 2009).

*Hines* did not purport to decide the question of whether an employee's theft from a county government office which receives no federal program benefits may be prosecuted under §666(a)(1)(A) simply because a City government office serving the same citizens *does* receive federal program benefits. *Hines* relied on *Sabri v. United States*, 541 U.S. 600 (2004), which rejected a facial challenge to §666(a)(1)(B) on the basis for failing to require proof that bribery involved or affected federal program money. The Supreme Court cautioned that generic, facial challenges "carr[y] too much promise of 'premature interpretatio[n] of statutes' on

23

the basis of factually bare-bones records." *Id.* at 609, paraphrasing *United States v. Raines*, 362 U.S. 17, 22,(1960).

C.       §666(a)(1)(A) violates the Tenth Amendment as applied to Robinson.

The Tenth Amendment guarantees that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  The police power "belongs to the States and the States alone." *United States v. Comstock*¸130 S.Ct. 1949, 1967 (2010) (Kennedy, J., concurring). The Federal Constitution enumerates distinct powers in the United States Congress in Article I, §8 of the Constitution.  This scheme "withhold[s] from Congress a plenary police power that would authorize enactment of every type of legislation." *United States v. Lopez*, 514 U.S. 549, 566 (1995).  If §666 made every instance of fraud or theft from a local government a federal crime, it would clearly exceed Congress's distinct powers in Article I, §8 of the Constitution.  *Fischer*, 529 U.S. at 681.

Congress has traditionally been reluctant to define as a federal crime conduct readily denounced by state criminal law. *United States v. Bass,* 404 U.S. 335, 350 (1971). Embezzlement of state funds by local government employees comes under Missouri's Stealing statute, Mo. Rev. Stat. 570.030.  The legislative history bears no hint Congress meant to impair the federal-state balance to permit federal prosecutions of local embezzlement or bribes by persons not acting on behalf of an

24

"organization, government, or agency" receiving federal benefits. *Fischer,* 529 U.S. at 581.

The government also mistakenly urged the district court to permit its prosecution of Counts 4-8 on the tenuous basis that the Federal program monies were briefly deposited into a "main clearing account" for the city(Tr-Vol-5 211), the same account from which Treasurer's Office employees salaries passed through pursuant to an administrative procedure that spared all County Offices the expense of printing up their own checks (Tr-Vol-5 13-14; Vol-6 145-46). Parking Division revenues alone provided all the money to pay its employees even under this system (T-Vol-5 79; Vol-6 11-12). The fact that multiple government offices contracted for payroll services through one entity fails to solve the Tenth Amendment violation of prosecuting Robinson under §666(a)(1)(A) for collecting an unearned salary paid for by funds unrelated to the charged federal funds (Tr-Vol-5 145-46). As a Kansas District Court noted,

> In the abstract, nearly every organization in one way or another receives "benefits" in excess of $10,000 under a federal program. Nearly every organization, for example, has agents that use highways constructed in part with federal monies. Although such organizations may remotely "receive benefits in excess of $10,000 under a Federal program involving a grant or other form of Federal assistance," such organizations surely do not fall within Section 666's jurisdictional reach…

*United States v. LaHue*, 998 F.Supp. 1182, 1187 (D. Kan. 1998).

Appellate Case: 13-3253    Page: 37    Date Filed: 02/12/2014 Entry ID: 4123542

Application of §666 to Robinson's collection of his Parking Division salary from the Treasurer's Office without any agency connection to the Human Services Department in the City Government office violates two state prerogatives: 1) the State's constitutional responsibility for regulation of electoral government plus the establishment and operation of its own government, and 2) the definition and enforcement of criminal law. "The maintenance in our federal system of a proper distribution between state and national governments of police authority and of remedies private and public for public wrongs is of far-reaching importance." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 513 (1940). "An intention to disturb the balance is not lightly to be imputed to Congress." *Id.*

Federal laws passed pursuant to Congress's Spending Power must be tied to a federal interest in the particular conduct. *See South Dakota v. Dole*, 483 U.S. 203, 207-08(1987). Applying §666 to purely local wrongdoing having no link to Federal Program goals as §666(b) requires exceeds Congress's Spending power. *See United States v. Santopietro*, 166 F.3d 88, 93 (2nd Cir. 1999) ("this is not a case where the transactions sought to be influenced concerned one department of a city and the requisite $10,000 of federal funds were received by a totally unrelated department"). *See also United States v. Morgan*, 230 F.3d 1067, 1073 (8th Cir. 2000) (Bye, J., concurring) ("Congress lacks the power under the Spending Clause to enact criminal laws governing third-party conduct."). In short, if indeed, §666

26

is interpreted to authorize Robinson's federal conviction for conduct having no

nexus to the federal interest on which the  government justified its charge,

§666(a)(1)(A) must be ruled unconstitutional as applied to him.

Counts IV-VIII require dismissal.

Appellate Case: 13-3253    Page: 39    Date Filed: 02/12/2014 Entry ID: 4123542

2.      The District Court Erroneously Admitted a Lay Witness's Legal Opinion on the Ultimate Issue of Whether Defendant was an Agent of St. Louis City

The District Court allowed, over objection, lay witness Richard Frank to express his opinion that Robinson worked as an "agent" of the City of St. Louis. This improper testimony was the only evidence relied upon by the government to prove an essential and contested element in counts four through eight in violation of Fed. R. Evid. 701(b).  By eliciting a bare assertion on how to resolve this ultimate issue, the government usurped the province of the jury, substituting Frank's opinion for those of the panel members.  *See, e.g.. Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988).  Further, Frank couched his testimony as a legal conclusion, telling the jury what result it should reach and usurping the court's responsibility to instruct the jury on the applicable law.  *See, e.g., United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009).  Egregious prejudice resulted, as the government made Frank's opinion its sole proof of agency for counts four through eight.  The problem was exacerbated because Frank declared Robinson an agent of the "City of St. Louis" in the sense of his service to its citizens, rather than the statutory meaning as an "agent" of the "organization, government, or agency" receiving Federal program funds within the meaning of §666(a)(1)(A)-(b).

Over objection (Tr-Vol-6 149-51, 156, 162-63), the court eventually allowed the following exchange:

Appellate Case: 13-3253     Page: 40     Date Filed: 02/12/2014 Entry ID: 4123542

Q.    . . . As the Director of Personnel for the City of St. Louis, how would you define agency, who an agent is?

A.    An agent is someone who works on behalf of someone, for some entity.

Q.    Would that include someone who is authorized to act on behalf of that entity?

A.    Yes.

Q.    And if the defendant was an hourly employee of the parking division from 2006 to 2010, would you have considered him an agent of the City of St. Louis?

MS. DRAGAN:    Object, Your Honor.

THE COURT:    I've heard the objection.  It is overruled.

A.    Yes, I would.

(Tr-Vol-6 163; Add. 126)  The government repeated this improper questioning in re-cross further emphasizing this faulty and flawed testimony (*Id.* at 166).

Frank's opinion interjected a bare assertion on how to resolve an ultimate issue – an issue that the jury, not the government, should have been permitted to resolve.  Courts widely exclude such ultimate issue opinions because "[a] lay witness's purpose is to inform the jury what is in the evidence, not to tell it what inferences to draw from that evidence."  *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009).  Ultimate issue opinions add nothing helpful to the evidence, but instead merely tell the jury how to decide the case, *see e.g. Kostelecky*, 837 F.2d at 830, and amount to nothing more than unnecessary inferences that must be left to

29

the jury to draw independently, *see, e.g., Krueger v. State Farm Mut. Ins. Co.*, 707 F.2d 312 (8th Cir. 1983). Frank's opinion on agency injected such inferences, adding nothing of value to evidence yet directing the jury on what result to reach. In effect, the District Court permitted the government to inject a juror of its own in place of the jury the Sixth Amendment guarantees to make such judgments.

Frank's agency opinion was more egregious than a mere ultimate issue opinion in that it was couched as a bare legal conclusion and one that wrongly defined the law. Such opinions carry great prejudice. *See Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987); *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981). Like ultimate issue opinions, legal conclusions improperly tell the jury "what inferences to draw from [the] evidence," *Noel*, 581 F.3d 490 at 496, and ultimately, "what result to reach." *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (internal quotations omitted). Worse, legal conclusion opinions invade the province of the court, for "it is the judge and not a witness that is to instruct the fact finder on the applicable principles of law." *United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009) (internal quotations omitted).

In this case, Frank's opinion affirmatively misled the jury with an opinion that non-City government employees constituted agents of the "City of St. Louis" in the sense that they serve "the boundary and all the citizens encompassed" in the City of St. Louis (Tr-Vol-6 165; Add. 127) in direct contradiction to the statutory

requirements of §666(d)(1) which defines agent, "in the case of an organization or government, [to] include[] a servant or employee, and a partner, director, officer, manager, and representative." The citizens who live in St. Louis do not constitute a cognizable "organization, government, or agency" as required by §666. Nor do they constitute the "local government, the City of St. Louis" as charged in the Indictment (DCD#168 at 9-12). By soliciting a legal conclusion from a lay witness, the government directly invited the jury to "accord too much weight to the pronouncement of a lay witness unfamiliar with the standards erected by the criminal law." *Ness*, 665 F.2d at 250. "The only plausible interpretation of §666(a)(1)(A) that gives effect to every provision in the statute is one that restricts criminal liability for the conversion of funds from an agency receiving federal funds to agents of that particular agency." *United States v. Sunia*, 643 F.Supp.2d 51, 63 (D.D.C. 2009). Any other interpretation of the statute would make its explicit references to agencies "subsidiary to and therefore redundant of the language in the statute regarding organizations and governments." *Id*.

The term "agent," as specially defined in §666(d)(1) and as applied in §666(a)(1)(A) and (b), comes within the category of subjects about which courts exclude lay opinion testimony because of their "separate, distinct, and special legal meaning." *Hogan*, 812 F.2d at 411. *See also United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227, 1234 (8th Cir. 1992) (existence of "conspiracy" or whether

31

someone "conspired"); *Christiansen v. Nat'l Sav. and Trust Co.*, 683 F.2d 520

(D.C. Cir. 1982) (existence of "fiduciary relationship"). Soliciting a lay opinion of

such terms "demands a conclusion as to the legal implications of conduct." *Misle*

*Bus Co.*, 967 F.2d at 1234.

The inadmissible testimony resulted in substantial prejudice, as the

government urged the jury to rely on Frank's improper opinion as the only direct

evidence it heard about agency:

> Folks, the uncontroverted evidence in this case, *the only*
> *evidence* you heard on that point was from the director of
> personnel from the very City of St. Louis we're talking about,
> Mr. Frank. And he said without any qualification, this
> defendant Fred Robinson is . . . an agent of the City of St.
> Louis.

(Tr-Vol-7 87) (emphasis added). The government's critical reliance on this

inadmissible opinion which wrongly stated the law precludes a finding of

harmless. Counts IV through VIII require dismissal.

3. The district court committed instructional error by

   A. Refusing To Give Either Theory of Defense Instructions D or E that if
      the jury did not find Defendant to be an agent of the entity receiving
      federal funds, it must acquit him of Counts 4-8.

This Court reviews jury instructions for abuse of discretion, but applies *de*

*novo* review to the lower court's interpretation of law. *Kahle v. Leonard*, 563 F.3d

736, 741 (8th Cir. 2009). Trial courts have wide latitude in formulating the

wording of instructions, yet this Court reverses errors that mislead or that had a

Appellate Case: 13-3253    Page: 44    Date Filed: 02/12/2014 Entry ID: 4123542

probable effect on the verdict. *United States v. Dooley,* 580 F.3d 682, 685 (8th Cir. 2009). This Court assesses the adequacy of instructions viewing them as a whole and in the context of the trial. *United States v. Whitehill*, 532 F.3d 746, 752 (8th Cir. 2008).

This Court has long recognized a defendant's right to an instruction on their theory of defense, based on a timely proffer of an instruction that correctly states the law with record support. *United States v. Akers*, 987 F.2d 507, 514 (8th Cir. 1993). Robinson's defense to Counts 4 through 8 focused exclusively on §666(a)(1)(A)'s requirement that "the defendant must be an agent or employee of the government or agency that receives the federal funds that provide the basis for federal jurisdiction." *Peery*, 977 F.2d at 1232. The Federal program money in question consisted of homeless relief grants from HUD to the Department of Human Services within the City Government of St. Louis headed by the Mayor (Tr-Vol-5 215-222, 229, 235; Vol-6 170, 173; Appx-48A-E). As detailed in Point 1, the government's own witnesses established that Treasurer's Office workers are not employees of the City government. To overcome this blow, the government elicited Frank's lay opinion that county employees operate within the city boundaries for "all the citizens encompassed therein" and, in that sense, they "act on behalf of the City of St. Louis" and constitute "agents" in the sense of someone who works for others (Tr-Vol-6 158-160, 163, 165; Add. 126-27).

33

Robinson requested Instruction D to accurately instruct the jury:

> "If you find that Robinson was not an agent of the agency that received the
> federal funds, the Department of Human Services, you must find him not
> guilty."

(Tr-Vol-7 7-8; Add. 132). In the alternative, he offered Instruction E stating the

statutory agency requirement without specifying the Department of Human

Services:

> If you find that Robinson was not an agent of the agency that received the
> federal funds, you must find him not guilty.

(*Id*.; Add. 132). The District Court denied both instructions (*id*.).

Robinson had a dire need for either Instruction D or E to make clear to the

jury that they must acquit him if it found he was not an agent or employee of the

government or agency receiving federal funds. Instructions D and E correctly

stated §666's requirements and controlling case law, *see Peery*, *supra*, and rested

on the government's own evidence that the $10,000 in federal program money was

delivered to the Department of Human Services within the municipal government

of which Robinson was not employed (Tr-Vol-5 215-222, 229, 235; Vol-6 168,

170, 173; Appex-ex48A-E). Either instruction would have blocked the

government's non-statutory bid to convict Robinson simply because he worked as

a public servant of "all the citizens encompassed in the City of St. Louis" (Tr-Vol-

7 95). Absent Instruction D or E, the government easily misled the jury to

disregard the agency element required by §666(a)(1)(a) and (b) and to erroneously

conflate the "City of St. Louis" as defined by its citizens with the "City of St. Louis" in the sense of the "local government" charged as receiving $10,000 in federal program money. (*Id.*). The rest of the instructions -- having failed to save the district court itself from being misled by the government's reasoning-- could not save the jury from reaching the false conclusion that Robinson's lack of agency with the city government receiving federal money did not matter. Denial of the instruction abrogated Robinson's Fifth and Sixth Amendment rights to put forth his defense and to a jury finding of every element. *See Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).

> B) Denying Instruction C that to be an agent of the City, one must have authority to act on its behalf with respect to its funds, and instead giving instructions 22 and 15 that the federal funds requirement is proved by their mere receipt.

The district court likewise erred by submitting Instruction No. 22, directing the jury that the element of federal program funds was "fully proved" once the jury found the City of St. Louis received them, regardless of whether offense conduct had any effect on them (Tr-Vol-7 34), and in denying Defendant's Instruction C that, "[f]or an individual to be an agent of the City of St. Louis that individual must be authorized to act on behalf of the City of St. Louis with respect to its funds." (*Id.* at 7; Add. 131).

As prosecution witnesses established Robinson's lack of employment with the charged local government, the government conflated the term "City of St.

Appellate Case: 13-3253    Page: 47    Date Filed: 02/12/2014 Entry ID: 4123542

Louis" with the nonstatutory definition of "the boundary and all the citizens encompassed in the City of St. Louis" (Tr-Vol-6 147, 165), rather than the "government" §666(b) requires. Instruction 22 stated,

> "[i]f you find that the City of St. Louis received $10,000 or more in federal assistance as discussed in instructions 17, 18, 19, 20, and 21, that element of the offense is established whether or not there was proof that the federal funds were affected in any way,"

(Tr-Vol-7 34). This instruction fed the government's ploy of misleading the jury to believe the City government's receipt of federal money alone sufficed even if it did not believe Robinson was an agent of that municipal government (Tr-Vol-6 163; Tr-Vol-7 87, 88). The error was compounded by use of identical language in Instruction 15, that "[i]f you find that the Paideia Corporation d/b/a the Padeia Academy received $10,000 or more in federal assistance as discussed in instructions 13 and 14, that element of the offense is established whether or not there was proof that the federal funds were affected in any way." (Tr-Vol-7 4, 24).

To prevent this misperception, Robinson offered Instruction C, that, "[f]or an individual to be an agent of the City of St. Louis, that individual must be authorized to act on behalf of the City of St. Louis with respect to its funds." (Tr-Vol-7 7). The instruction came from Fifth Circuit Pattern Instruction No. 2.37, language drafted to address precisely the misapprehension the government's evidence and arguments invited here. Like this Court, the Fifth Circuit holds that the offense conduct need not impact the federal funds. *United States v. Phillips*,

36

219 F.3d 404, 411 (5th Cir. 2009). "It is a different matter altogether, however, to suggest that the statute can reach any government employee who misappropriates purely local funds, without regard to how organizationally removed the employee is from the particular agency that administers the federal program." *Id*.

Thus, "in the context of the trial," *Whitehill*, 752 F.3d at 532, the submission of Instructions 22 and 15 combined with the denial of Instruction C provided inadequate instruction on the element of whether Robinson constituted an agent of the "local government" receiving the federal program money. This too abrogated his rights to a finding of every element. *Sullivan*, at 278.

These errors require reversal of Counts IV through VIII.

4.  The GPS Evidence Violated Robinson's Fourth Amendment Rights.

This Court reviews *de novo* the denial of a motion to suppress evidence. *United States v. Esquivel*, 507 F.3d 1154, 1158 (8th Cir. 2007).

The Fourth Amendment makes inviolate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Courts enforce its protections via the exclusionary rule, created to "compel respect for the constitutional guaranty" and "to deter future Fourth Amendment violations." *Davis v. United States,*131 S.Ct. 2419, 2426 (2011).

During the pendency of this prosecution, the Supreme Court established in *United States v. Jones* that the "installation of a GPS device on a target's vehicle,

and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" 132 S.Ct. 945, 949 (2013). The Majority reasoned that the government committed common-law trespass by installing a tracker on Jones's car. *Id*. at 949-50. The Court did not reach the question of whether either reasonable suspicion or probable cause in planting the GPS device on a vehicle would pass Fourth Amendment muster. *Id.* at 954. The district court ruled admissible the GPS evidence the agents covertly seized from Robinson (for almost twice the duration of the trespass in Jones), relying on a pre-*Jones* ruling that GPS evidence taken from a vehicle moving on public streets offends no reasonable expectation of privacy (DCD#148, pp. 31-32, citing *United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010)). *Jones* abrogated the basis for the *Marquez* ruling, and likewise negated the basis for the district court's suppression ruling. *Id*. at 607.[1]

### A Search Warrant Was Required

Every analysis of reasonableness must start from "the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Arizona v. Gant*,

---

[1] The Court correctly denied admission under the good-faith exception finding no binding authority existed in this Circuit at the time the GPS devise was installed (Addendum-111), consistent with *United States v. Barrza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013).

Appellate Case: 13-3253    Page: 50    Date Filed: 02/12/2014 Entry ID: 4123542

556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  The warrant requirement is "not an inconvenience to be somehow 'weighed' against the claims of police efficiency," but rather "an important working part of our machinery of government, operating as a matter of course to check the well-intentioned but mistakenly over-zealous, executive officers who are a part of any system of law enforcement." *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971) (internal quotation marks and citation omitted).  Excluding GPS tracking from the warrant requirement would enable police to "evade[] the ordinary checks that constrain abusive law enforcement practices:  limited police resources and community hostility." *Jones*, 132 S.Ct. at 956 (Sotomayor, J., concurring).

This case demonstrates the lack of any "special need" by law enforcement justifying an exception from the warrant mandate, in contrast to scenarios presenting concerns for officer safety, protecting territorial integrity, or maintaining order.  *See United States v. Ortiz*, 878 F. Supp. 2d 515, 532-33 (E.D. Pa. 2012) (internal citations omitted).  "Special needs" cases comprise a "closely guarded category." *Ferguson v. City of Charleston*, 532 U.S. 67, 84 (2001).  Here, the agents had no special or exigent need to plant the GPS, they simply chose to add its warrantless use to "uncover evidence of ordinary criminal wrongdoing" --

Appellate Case: 13-3253     Page: 51     Date Filed: 02/12/2014 Entry ID: 4123542

insufficient cause for "special need" exceptions. *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000).

For reasonable suspicion to suffice, the officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Officers must reasonably suspect the subject is engaged in, or poised to commit a criminal act at that moment. *Brown v. Texas*, 443 U.S. 47, 51 (1979). The Fourth Amendment demands "some minimal level of objective justification for making the stop." *Sokolow*, 490 U.S. at 7. Even if the court was correct in allowing admission of GPS evidence under reasonable suspicion, the evidence in this case did not rise to that level.

To place the GPS, Agent Comeau relied on interviews with four former Treasurer's Office employees, three of whom were suing the Treasurer, lacking indicia of reliability (4-12-2012-Hearing 15-19, 29). Although they suggested Robinson was a "ghost employee," they had no specific facts to back their suspicions. Prior to attaching the GPS device from January 22, 2010 through March 17, 2010 (Tr-Vol-6 22-23), the agent admitted her minimal investigation had only revealed: "At that time, we did not know specifically what his hours of employment were supposed to be. We heard from some individuals that there was night hours worked, so at the time, we did not know when he was supposed to be performing his job." (12-1-2011-Hearing 31; Add. 129). "At that time, I think I

40

was more focused just on collecting the information. I did more of the corroboration afterwards, after the tracker was finished." (*Id*. at 32). Agent Comeau did not interview Robinson's direct supervisor, Roy White, or Treasurer Williams (4-12-2013-Hearing 37, 40). The only information Agent Comeau gained during these interviews was that Robinson was connected with the Paideia Academy and acquainted with Larry Williams (*id. at* 18, 37). These facts supported only a suspicion of Robinson's total absence from his employment.

Agent Comeau's minimal independent investigation added little to fill the void of articulable or objective facts. She possessed no time sheets for Robinson nor did she know his duties (Tr-Vol-6 63, 65). She saw his car at Paideia Academy four or five times during the afternoon (EHT 11-13, 23). These meager facts had less significance in light of information she received that Robinson worked on a security squad conducting some night work (4-12-2013-Hearing 18, 34). Without knowledge of his scheduled, Comeau's limited observations constituted an unparticularized suspicion falling far short of reasonable suspicion. *Sokolow*, 490 U.S. at 7. Comeau clearly utilized the GPS as a simple discovery tool to determine if further investigation was warranted. For a week before attaching the GPS, Comeau ruminated with their supervisors and an Assistant United States Attorney on how invasive to make their investigation, but they

41

purposely avoided review by an independent magistrate (4-12-2012-Hearing 45-46; Addendum-68).

The Government knowingly took substantial risks relying upon the warrantless GPS evidence after its admissibility was undercut by *Jones* pretrial. Additionally, the district court explicitly rejected the government's argument to admit the evidence under the good faith exception prior to trial (Addendum-112) deeming it admissible on the unresolved grounds of reasonable suspicion. Aware of the risk of reversal on all counts, the government believed it essential to prove its case. The government concluded their case with the GPS testimony (T-Vol-6 13). In an attempt to secure "proof beyond a reasonable doubt," the government chose to risk retrial by introducing substantial evidence garnered from the warrantless GPS tracking. Agent Comeau testified using Exhibit 50, which cataloged in explicit detail the location of Robinson's vehicle every day for 55 days (*Id.* at 23-27). It stressed Robinson was at Paideia daily and more specifically at the "Little People's Academy" 61 times during the surveillance (Exhibit 50; T-Vol-6 55). Prior to trial, the government relied heavily on the unlawful tracking evidence as a key link between the two distinct offenses and requested a joint trial. The government professed repeatedly to need the GPS evidence to prove all counts. (DCD#196, p.4) The failure to exclude this unlawful evidence requires reversal on all counts.

42

5. Improper joinder under Fed. R. Evid. 8(a) and denial of Rule 14(a) severance.

Misjoinder of charges presents a question of law that this Court reviews *de novo*. *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994). The Court reviews rulings on severance under Rule 14(a) for abuse of discretion. *Id*.

The meager overlap in timing of the offense conduct alleged in the Paideia charges with two of the five Treasurer's Office Counts did not overcome the qualitatively disparate nature of the two cases as to make them properly joined. The joint trial impermissibly invited the jurors to ignore reasonable doubts based on proof of good faith in the Paideia counts and the lack of agency in the Treasurer's counts.

Rule 8(a) permits joinder of counts against a defendant for offenses that "are of the same or similar character," or "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *See, e.g., United States v. Lindsey,* 782 F.2d 116 (8th Cir. 1986) (joinder upheld for being a felon in possession of a .45 caliber pistol in 1982 and for being a felon-in-possession of a 20 gauge shotgun in 1984, based on same prior felony). Although courts generously construe Rule 8(a) in favor of joinder, this reflects the separate layer of protection in the severance provision in Fed. R. Crim. P. 14. *United States v. Randazzo*, 80 F3d 623, 627 (1st Cir. 1996).

Appellate Case: 13-3253    Page: 55    Date Filed: 02/12/2014 Entry ID: 4123542

Rule 14 provides a district court discretion to order severance of counts, even if properly joined under rule 8(a), to avoid "undue prejudice." The district court bears a continuing duty to be alert for the necessity of severance as trial progresses. *United States v. Engleman*, 648 F.2d 473, 481 n.5 (8th Cir. 1981).

Distinct and separate crimes may not be joined simply because they fall within the same broad category of offense. *See United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996) (mislabeling shrimp and tax fraud lack meaningful similarity, despite commonality that both involve false statements); *United States v. Foutz*, 540 F.2d 733 (4th Cir. 1976) (beyond fact the same bank was hit, differences in style of robberies exceeded similarities); *United States v. Reaves*, 2009 WL 3643476, *3 (D. Neb. 2009) (armored car robbery was different in kind from bank robbery, though in both perpetrators wore dark clothes and acted aggressively to get money).

"Congress did not provide for joinder for unrelated transactions and dissimilar crimes merely because some evidence might be common to all of the counts." *Randazzo*, 80 F3d. at 628. For example, in *Randazzo*, the government joined charges that Randazzo, as President of the New England Shrimp Company, made false statements relating to and misbranded shrimp the company sold with other charges that he also caused the company to file false corporate tax returns. 80 F.3d at 626. Both sets of charges related to the making of false statements, yet

they did not equate charges of the same or similar nature nor manifest a common scheme or plan. *Id*. at 628. The First Circuit recognized the government's claims that the shrimp and tax schemes overlapped in their timing, that Randazzo's control over the company comprised a common element, and that the Company's sagging financial conditioned provided a common motive. "But whatever, the rationale, we think that it is very hard to describe adultering or mislabeling shrimp as offenses "similar" to tax fraud – except at a level of generality so high as to drain the term of any real content." *Id*.

As in *Randazzo*, the nature of the offenses alleged against Robinson can be termed "similar" in only a "very general way," as the magistrate termed it (DCD#83 at 14). Both "involve[ed] frauds upon his employers and the submission of fraudulent documents or representations," to use the district court's phrasing, and had some overlap in the dates on which the offense conduct occurred (DCD#148 at 12). The record betrays the error in the district court's reasoning and easily distinguishes the cases the court cited as precedent for denying severance.

The managerial intrigue and manipulation characterizing the government's portrayal of the Paideia offense conduct bore no meaningful similarity to collection of unearned Parking Division wages by a low-ranking non-supervisory employee of the Treasurer's Office. Granting that Robinson's sightings at Paideia Academy during normal office hours supported a finding that he was not at those times doing

Appellate Case: 13-3253    Page: 57    Date Filed: 02/12/2014 Entry ID: 4123542

work for the Treasurer's Office, the offense conduct relating to Paideia bore no similarity to and did constitute admissible proof to establish the City Treasurer's charges.

By the same token, the government's evidence that Robinson filed false timesheets or tardy reports of defective parking meters had no legitimate relevance to prove the government's portrait of a manipulative leader of a charter school devising intricate webs of deception over the supervisory board, administrators, advisors and auditors. The dissimilarities in the offense conduct underlying the two schemes far exceeded the broad generality that they both constituted attempts to get money by fraud. *See United States v. Foutz*, 540 F.2d at 737 (differences in two robberies of same bank exceeded similarities).

The district court mistakenly relied on cases in which the same evidence proved the criminal offenses combined for joint trial (DCD#148 at 12). In *United States v. Garrett*, 648 F.3d 618 (8th Cir. 2011), the government joined two charges of being a felon-in possession of a firearm, months apart, both counts based on the same prior conviction. *Garret* cited *United States v. Robaina*, 39 F.3d 858 (8th Cir. 1994), in which an indictment properly joined a charge of possessing cocaine with intent to distribute based on cocaine bricks discovered in the defendant's laundry which constituted part of the evidence proving the conspiracy to distribute the drug and distribution thereof five months later. Similarly, in *United States v.*

Appellate Case: 13-3253    Page: 58    Date Filed: 02/12/2014 Entry ID: 4123542

*Ruiz*, 412 F.3d 871 (8th Cir. 2005), the methamphetamine involved in a first set of transactions occurring at a KFC outlet matched the methamphetamine involved in the other groups of charges in its purity, cutting agent, and the presence of pseudoephedrine. *Id*. at 886.

The district court summarily declared, without any supporting authority, that "evidence of Defendant's employment at Paideia is extremely relevant to the City of St. Louis charges (DCD#148 at 12). While the hours Robinson spent at Paideia may be relevant to show he was not at those times monitoring parking meters, the fraudulent acts the government alleged at Paideia bore no added probity to establish the Parking Division fraud beyond inviting the impermissible and prejudicial inference of a propensity to engage in diverse forms of fraud. *See, e.g.*, *United States v. Mothershed*, 859 F.2d 585, 586 (8th Cir. 1988) (only probative value in bank robbery trial of defendant's prior bank theft was that bank thieves are more likely to rob banks than those who have not stolen from banks).

<u>Denial of Rule 14(a) Severance</u>

The district court likewise abused its discretion in denying severance to prevent prejudice under Rule 14(a). It erroneously presumed the admissibility of Robinson's collection of unearned Parking Division pay to prove his deceitful misdirection of Paideia Board and administrators (DCD#148 at 12). The district court's presumption depends upon the propensity inference that someone who

47

collects hourly wages he does not earn is more likely to have committed fraud alleged in a managerial position. This conclusion rests on the very propensity inferences prohibited by Fed. R. Evid. 404(b). *Mothershed*, 859 F.2d at 586.

The district court's conclusion got no support from the single case it cited for its conclusion, *United States v. Jewell*, 614 F.3d 911, 922 (8th Cir. 2010) (DCD #148, pp. 13-14). *Jewell* upheld the admission of evidence showing a separate tax evasion scheme to prove Jewell's intent to engage in the charged tax evasion scheme. The charged and uncharged schemes shared a distinct pattern whereby Jewell created false entities to facilitate tax evasion, and the uncharged conduct helped establish Jewell's intent to employ the charged scheme to evade taxes. *Id.*

The district court conceded joint trial of the two schemes posed at least the potential for prejudice (DCD #148, p. 14).[2] However, it left to the parties the task of "compartmentalizing" the evidence, adding that the instructions would address "spillover" (DCD #148, p. 14). When the last government witness called to testify to the Paideia counts stepped down, defense counsel renewed the motion to sever the Treasurer's Office counts still to be heard (Tr-Vol-4 185-87). Counsel accurately foretold at that point that none of the government's Treasury Office evidence would relate to the Paideia offense conduct, and that the jury would be prejudiced by hearing the Treasurer's Office conduct that didn't relate to the

---

[2] The magistrate acknowledged Robinson's "prejudice argument is strong," but declined to resolve the severance issue before trial (DCD #36, p. 10).

48

Paideia charges at all (Tr-Vol-4 187). Defense counsel renewed the motion to dismiss Counts 4 through 8 and for severance in the wake of a mid-trial disclosure that defense witness Frank intended to conclusively establish Robinson was not employed by the City of St. Louis thereby precluding the government from satisfying the jurisdictional elements in those counts (Tr-Vol-5 3-4). Despite warning the court that allowing the government to proceed on those counts absent evidence of an essential element would irreparably prejudice Robinson on the remaining counts, the district court again denied severance (*Id.*).

The district court's repeated reliance on the jury's ability to compartmentalize the two disparate crimes took too limited a view of the types of prejudice their joinder invites. A juror may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime charged. *United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996); *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976). A jury may also cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. *Close v. Leapley*, 18 F.3d 574, 578 (8th Cir. 1994), *quoting Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964). "A less tangible, but perhaps equally persuasive element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from one." *Id*. Indeed, the government explicitly tempted the jury to

49

indulge inferences of propensity, opening its summations with the broad assertion

that "the evidence has shown you that during the years that we're talking about

here, between 2006 and 2010, this defendant lived a life of fraud and he deceived

many people who trusted and relied upon him." (Tr-Vol-7 35).

Taken individually, each group of counts required the jury to resolve tricky

factual and legal complexities, enhancing the likelihood that one or more jurors

might opt to go ahead and punish an apparent ne'er-do-well despite doubts based

on, (a) in the Paideia charges, the conflicting inferences supporting either

Robinson's good faith belief, however mistaken, that funds could be utilized to

renovate a building to establish an early education center for the benefit of future

Paideia students, and (b) in the Treasurer's Office counts, the fundamental

jurisdictional problem of how a county employee in the parking division

constitutes an agent of the city government's Human Services Department tasked

with disbursing Federal benefits for the homeless.

The only instruction the district court submitted to "address spillover,"

consisted of the final charge stating "You must consider each count separately and

return a separate verdict for each count." (Tr-Vol-7 15). This instruction did little-

to-nothing to prevent jurors from resisting the impulse to punish a man for his

apparent predilection to engage in a variety of crimes. The Supreme Court has

noted that the maxim that jurors presumably follow limiting instructions grows out

50

of a pragmatic wish to avoid the expense of correcting injustice, rather than any reality of jurors' capability to resist the urge to punish a bad man despite doubts warranted by the evidence. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). The presumption should not be relied on when the risk is great jurors will not be able to follow the instruction "and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.'" *Simmons v. South Carolina*, 512 U.S. 154, 157 (1994) (plurality opinion). The unique record in this case, in which a learned and experienced judge felt moved to punish a defendant for failing to confess other charges notwithstanding his constitutional privilege precludes reliance on that presumption. See Point 7, infra.

This error requires reversal on all counts and separate trials on remand.

6. The District Court erroneously denied appellant's *Batson* challenge.

This Court reviews *Batson* claims for clear error. United States v. Jones, 245 F.3d 990, 992 (8th Cir. 2001). The prima facie showing of racial motive in the prosecutor using four-of-seven peremptory strikes to remove all but one black juror, alone prompted the judge's observation, "I got to tell you, Mr. Goldsmith, I've got some concerns." (Tr-Vol-1 167-68). *Batson v. Kentucky*, 476 U.S.79, 89 (1986). The sole excuse for excluding Juror 26, her unemployment, applied equally to white Juror 7, whose jury sheet showed a blank space for current employment (Tr-Vol-1 169, 175).

Appellate Case: 13-3253    Page: 63    Date Filed: 02/12/2014 Entry ID: 4123542

Once a prosecutor offers even absurd facially neutral excuses in step two of *Batson* analysis, the Court must at step three consider the persuasiveness of the excuse to determine if the defendant proved it to be pretextual. *Gee v. Grouse*, 110 F.3d 1346, 1351 (8th Cir. 1997). One form of pretext manifests when prosecutors retain white jurors who should have posed equal or greater cause for concern under the rationale cited for excluding black jurors. *Snyder v. Louisiana*, 552 U.S. 472, 482 (2009) (pretext proved by retention of white juror whose scheduling conflicts with jury service equaled or exceeded those voiced by excluded black juror). Pretext also manifests in disparate questioning of black and non-black jurors. *Miller-El v. Dretke*, 545 U.S. 231, 249 (2005) (pretext reflected in questioning excluded black juror about willingness to impose death while posing no questions to white juror whose questionnaire called a death sentence "easy on the convict.").

The prosecutor asked Juror 26 "what type of work  do you do," even though the jury list reported her questionnaire response that she was "unemployed" (Tr-Vol-1 99). She testified she was unemployed, though baking "on the side" and that she previously worked in baking (Tr-Vol-1 99). The prosecutor did not question Juror 7, although the space for his current employment was blank (prior employment in construction was listed below that space, Tr-Vol-1 175).

The district court upheld the strike on the basis that Juror 26 identified herself as unemployed during voir dire, while the Court admitted it had "no idea

52

whether that is the case with respect to [Juror 7] or not." (Tr-Vol-1 176). The district court did not know if Juror 7 was unemployed because the government did not ask him, despite the blank space for his current employment. The district court mistakenly denied Robinson *Batson* relief based on the government's disparate questioning, which only confirmed the pretext.

The government presumed Juror 7, a white male, to be currently employed while manifesting no concern for the jury sheet listing that he had no current employment. The extensive questioning about Juror 26's employment magnifies the pretext in the prosecutor's exclusion of her while making no inquiry to confirm or reject the jury sheet's indication that Juror 7 he had no employment, betraying a deliberate effort to exclude Juror 26.

This error requires reversal on all counts.

7.    The Court imposed prison time based on Robinson's failure to confess.

This Court reviews sentences for procedural and substantive unreasonableness reflecting abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The District Court unabashedly sentenced Robinson to prison because he failed to confess wrongdoing, even if the government mischarged him:

> "…But according to this defendant, he didn't make any mistakes. He didn't learn anything as far as I can tell. He has not admitted that he submitted false time sheets to the Treasurer's Office. He has not admitted that he failed to make these disclosures. He has not admitted that he caused other bank accounts to be created at the tail end of Paideia Academy's existence that had the effect of assisting and concealing the continued

Appellate Case: 13-3253    Page: 65    Date Filed: 02/12/2014 Entry ID: 4123542

transfer of funds at a time when Paideia Academy was going under. He admits none of that."

"I do not see or hear anything from this defendant that suggests that anything short of prison has even the potential to deter him from like conduct in the future, to protect society from him from future crimes because he didn't do anything wrong. And even if something did not fit squarely within a particular statute, this defendant did something wrong. And so when you ask me what distinguishes this case from some of those other cases where defendants got lighter sentences, the abuse of Robinson's position of trust with respect to Paideia Academy and the Department of Elementary and Secondary Education distinguishes this case. And his continued insistence that he did nothing wrong distinguishes this case.

It would be a totally different case were Robinson to say yes, I submitted any number of false time sheets, but I do not believe that there is any jurisdiction under Section 666 to prosecute this matter and I will preserve my right to appeal. There has been none of that here." (Sent.Tr. 74-75)

Basing a prison term on whether a defendant confesses wrongdoing violates the Fifth Amendment right against self-incrimination. *United States v. Laca*, 499 F.2d 922, 927-28 (5th Cir. 1974); *Thomas v. United States*, 368 F.2d 941, 945 (5th Cir. 1966). "No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated." *Id*, *quoting United States v. Tateo*, 214 F.Supp. 560, 567 (S.D. N.Y. 1963). Here, the district court specifically rejected defense counsel's argument for probation on the explicit basis that the defendant refused to confess wrongdoing: "He has not admitted that he submitted false time sheets to the Treasurer's Office. . . He has not admitted that he caused

54

other bank accounts to be created at the tail end of Paideia Academy's existence that had the effect of assisting and concealing the continued transfer of funds at a time when Paideia Academy was going under." (Sent.Tr. 74).

Basing a prison term on the exercise of constitutional rights produces an unreasonable sentence because the punishment thereby rests on an improper factor. S*ee United States v. Medina-Cervantes*, 690 F.2d 715, 716 (9th Cir. 1982) (accused may not suffer more severe punishment for exercising his constitutional trial right). The district court's reliance on the fact Robinson did not admit guilt of an uncharged offense similarly comprises an improper and unreasonable basis for the sentence. *United States v. Safirstein*, 827 F.2d 1380, 1388 (9th Cir. 1987) (judge cannot penalize exercise of the constitutional privilege by enhancing a sentence for the defendant's failure to cooperate by admitting guilt to uncharged crimes). *See also Rita v. United States*, 551 U.S. 338, 382 (2007) (Scalia, J., concurring in part) (reasonableness review provides relief from sentences based on impermissible factors); *United States v. Garcia-Hernandez*, 530 F.3d 657, 665-66 (8th Cir. 2008) (reversing for procedural error of relying on improper factor). The error mandates resentencing on all counts. The district court explicitly relied on Robinson's failure to confess wrongdoing as to both the Paideia counts and the Treasurer's Office charges.

8. DESE Is Not Entitled To Restitution

Restitution awards are reviewed for abuse of discretion. *United States v. Frazier*, 651 F.3d 899, 903 (8th Cir. 2011). The Mandatory Victims Restitution Act (MVRA) requires individuals convicted of wire fraud to pay their victims restitution. *U.S. v. Louper-Morris*, 672 F.3d 539, 566 (8th Cir. 2012); 18 U.S.C. §§3663A-3664. However, restitution may only be awarded for "the victim's provable actual loss…" *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008). The MVRA generally prohibits victims from obtaining a double recovery or a windfall through restitution. *Louper-Morris*, 672 F.3d at 566.

The district court abused its discretion awarding DESE $242,533 in restitution which constituted a double recovery. DESE was the state agency charged with administering the Title I funds. (RichardHay-Tr. 52-53). If Paideia started a Title I program, the school would pay for the expense out of its own pocket (Id. at 54). Paideia then had to make a request to DESE to recover those funds (*id.;* Appx-receipts). Paideia was only reimbursed for funds already spent on DESE approved expenditures (*id.*)

Accordingly, any restitution awarded to DESE overcompensates that agency. DESE intended to spend Title I funds on preapproved education expenses like books, special education teachers, and school lunches, which is exactly what was purchased. Instead of compensating DESE for their *actual* losses, *Frazier*, 651 F.3d at 904, the district court enabled a double recovery by allowing DESE to

56

receive the educational services obtained with Title I funds, *plus* an additional restitution award from Robinson. Such a windfall and double payment –totaling almost a quarter-million dollars -- constituted an abuse of discretion.

## CONCLUSION

Point 1 requires Counts IV-VIII be dismissed for insufficiency and a retrial for Counts I-III without the taint of the charges for which the government had no jurisdiction. Points 2-3 require remand for a new trial on Counts IV-VIII due to the admission of improper testimony and erroneous jury instructions. Point 4 requires reversal and retrial of all counts without admission of the unlawfully seized GPS evidence. Point 7 requires resentencing on all counts. Point 8 compels an order vacating DESE's restitution.

Respectfully submitted,


/s/ Diane Dragan
DIANE DRAGAN
Assistant Federal Public Defender

and

/s/ Felicia Jones
FELICIA JONES
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Diane_Dragan@fd.org
ATTORNEY FOR DEFENDANT-APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Hal Goldsmith, Assistant United States Attorney.

/s/ Diane Dragan
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(b), the undersigned hereby certifies that this Brief complies with the type-volume limitation.  The number of words contained in this Brief (excluding the cover, statement as to argument, tables of contents and authorities pursuant to Fed. R. App. 32(b)(iii)) typed in Word is 13,400.

/s/ Diane Dragan
Assistant Federal Public Defender

Appellate Case: 13-3253    Page: 70    Date Filed: 02/12/2014 Entry ID: 4123542

A D D E N D U M