IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 13-3253

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

FRED ROBINSON,

Appellant.

Appeal from the United States District Court
Eastern District of Missouri
District Court No. 4:11CR361-AGF

The Honorable Audrey G. Fleissig,
United States Judge,
Presiding

**BRIEF FOR THE AMERICAN CIVIL LIBERTIES UNION AND THE
AMERICAN CIVIL LIBERTIES UNION OF MISSOURI AS *AMICI CURIAE* IN
SUPPORT OF APPELLANT**

ANTHONY E. ROTHERT
American Civil Liberties Union
  of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Tel: (314) 652-3114

NATHAN FREED WESSLER
BRIAN HAUSS
CATHERINE CRUMP
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

## CORPORATE DISCLOSURE STATEMENT

No *amici* have parent corporations or are publicly held corporations.

Appellate Case: 13-3253   Page: 2   Date Filed: 02/19/2014 Entry ID: 4125176

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................................ i

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

STATEMENT OF *AMICI CURIAE* ..................................................................................1

    AUTHORITY TO FILE *AMICUS* BRIEF ........................................................................1

SUMMARY OF ARGUMENT ..........................................................................................2

ARGUMENT ..................................................................................................................3

   I. The Warrantless Search of Robinson's Car Violated the Fourth Amendment..................3

     A.   Warrantless searches are presumptively unreasonable. ..............................................4

     B.   *Marquez* did not establish that reasonable suspicion validates the installation and use of a GPS tracking device..................................................................6

     C.   No exception to the warrant requirement applies. ....................................................11

        1.   The automobile exception and its justifications do not apply to location tracking. ........................................................................12

        2.   GPS searches by law enforcement do not fall within a "special need." ..........15

  II. The District Court Correctly Held That the Good-Faith Exception to the Exclusionary Rule Does Not Apply Because the FBI Agents Did Not Rely on Binding Appellate Precedent. ..........................................................................19

     A.   Clear Precedent Supports the District Court's Conclusion. ....................................19

     B.   A Clear Rule is Constitutionally Superior to a Murky One. ...................................29

     C.   The Court Should Reach the Fourth Amendment Questions Regardless Whether the Good Faith Exception Applies. ..........................................................30

CONCLUSION...............................................................................................................32

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a) .....................................34

Appellate Case: 13-3253    Page: 3    Date Filed: 02/19/2014 Entry ID: 4125176

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*, 556 U.S. 332 (2009) ................................................. 3, 5, 20

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) .................................. 29

*Bell v. Miller*, 500 F.3d 149 (2d Cir. 2007) ................................................. 10

*Caldwell v. Lewis*, 417 U.S. 583 (1974) ...................................................... 13

*California v. Acevedo*, 500 U.S. 565 (1991) ................................................. 12

*California v. Carney*, 471 U.S. 386 (1985) ................................................. 14

*Carroll v. United States*, 267 U.S. 132 (1925) ............................................ 13

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) ........................................ 5

*Davis v. United States*, 131 S. Ct. 2419 (2011) .................................... passim

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001) .................................... 16

*Gutter v. E.I. DuPont de Nemours and Co.*, No. 95-2152-CIV-GOLD, 2001
WL 36086589 (S.D. Fla. Mar. 27, 2001) .................................................. 11

*In re Finley, et al.*, 160 B.R. 882 (Bankr. S.D.N.Y. 1993) ........................... 11

*Illinois v. Gates*, 462 U.S. 213 (1983) ......................................................... 31

*Illinois v. Krull*, 480 U.S. 340 (1987) ......................................................... 28

*Illinois v. Lidster*, 540 U.S. 419 (2004) ......................................................... 6

*Johnson v. United States*, 333 U.S. 10 (1948) ............................................... 5

*Katz v. United States*, 389 U.S. 347 (1967) ....................................... 3, 5, 12

*Kyllo v. United States*, 533 U.S. 27 (2001) ................................................. 25

*Maryland v. Buie*, 494 U.S. 325 (1990) ...................................................... 17

*Mincey v. Arizona*, 437 U.S. 385 (1978) ..................................................... 14

*Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739 (2d Cir. 1987) 11

*Netsky v. United States*, 859 F.2d 1 (3d Cir. 1988) ..................................... 11

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) ........................................... 16, 18

*New York v. Belton*, 453 U.S. 454 (1981) ................................................... 20

*O'Connor v. Donaldson*, 422 U.S. 563 (1975) ............................................ 31

Appellate Case: 13-3253    Page: 4    Date Filed: 02/19/2014 Entry ID: 4125176

*O'Connor v. Ortega*, 480 U.S. 709 (1987) ................................................. 16

*Rakas v. Illinois*, 439 U.S. 128 (1978) ......................................................... 10

*Roe v. Anderson*, 134 F.3d 1400 (9th Cir. 1998) ........................................ 11

*Samson v. California*, 547 U.S. 843 (2006) ................................................. 17

*Sutton v. Addressograph-Multigraph Corp.*, 627 F.2d 115 (8th Cir. 1980). 10

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................. 17

*Thornton v. United States*, 541 U.S. 615 (2004) ......................................... 29

*United States Martinez-Fuerte*, 428 U.S. 543 (1976) ................................. 16

*United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013) ................................. 26

*United States v. Andres*, 703 F.3d 828 (5th Cir. 2013) ............................... 26

*United States v. Barraza-Maldonado*, 732 F.3d 865 (8th Cir. 2013)21, 22, 28

*United States v. Bobo*, 419 F.3d 1264 (11th Cir. 2005) ............................... 10

*United States v. Casteel*, 717 F.3d 635 (8th Cir. 2013) ............................... 32

*United States v. Chadwick*, 433 U.S. 1 (1977) .............................................. 5

*United States v. Claude X*, 648 F.3d 599 (8th Cir. 2011) .............................. 5

*United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010) ............................. 21

*United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049 (E.D. Tenn. Oct. 30, 2012) ...................................................................................................... 32

*United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007) ........................... 9, 23

*United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996) ............................ 20

*United States v. Green* 275 F.3d 694 (8th Cir. 2001) ................................... 10

*United States v. Johnson*, 457 U.S. 537 (1982) ........................................... 21

*United States v. Jones*, --- U.S. ----, 132 S. Ct. 945 (2012) .................. passim

*United States v. Karo*, 468 U.S. 705 (1984) ........................................... 8, 25

*United States v. Katzin*, 732 F.3d 187 (3d Cir. 2013) .......................... passim

*United States v. Knights*, 534 U.S. 112 (2001) ........................................... 17

*United States v. Knotts*, 460 U.S. 276 (1983) ............................ 7, 8, 23, 25

*United States v. Lee*, 862 F. Supp. 2d 560 (E.D. Ky. 2012) ....................... 27

*United States v. Leon*, 468 U.S. 897 (1984) ......................................... 28, 29

Appellate Case: 13-3253     Page: 5     Date Filed: 02/19/2014 Entry ID: 4125176

*United States v. Macias-Valencia*, 510 F.3d 1012 (9th Cir. 2007) .............. 10

*United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010)...................... passim

*United States v. Martin*, 712 F.3d 1080 (7th Cir. 2013).................. 22, 23, 26

*United States v. Maynard*, 615 F.3d 561 (D.C. Cir. 2010).......................... 14

*United States v. Michael*, 645 F.2d 252 (5th Cir. 1981).............................. 26

*United States v. Oladosu*, 887 F. Supp. 2d 437 (D.R.I. 2012) .................... 28

*United States v. Ortiz*, 878 F. Supp. 2d 515 (E.D. Pa. 2012) ...................... 13

*United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010)............ 23, 28

*United States v. Place*, 462 U.S. 696 (1983) ................................................ 17

*United States v. Richard*, No. 2:09-992-PMD (D.S.C. Apr. 12, 2012)........ 28

*United States v. Robinson*, 903 F. Supp. 2d 766 (E.D. Mo. 2012)........ passim

*United States v. Rose*, Criminal Case No. 11–10062–NMG, 2012 WL 4215868 (D. Mass. Sept. 14, 2012) ............................................................ 28

*United States v. Smith*, --- F.3d ----, 2013 WL 6728097 (11th Cir. Dec. 23, 2013) ............................................................................................................ 26

*United States v. Sparks*, 711 F.3d 58 (1st Cir. 2013) .................................. 26

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010)............................. 31

*United v. Flores-Montano*, 541 U.S. 149 (2004).......................................... 16

*Woods v. Interstate Realty Co.*, 337 U.S. 535 (1949) .................................. 10

**Other Authorities**

3d Cir. I.O.P. 9.5.9 (2010) ............................................................................ 11

**Constitutional Provisions**

U.S. Const. amend. IV .................................................................................... 4

Appellate Case: 13-3253    Page: 6    Date Filed: 02/19/2014 Entry ID: 4125176

## STATEMENT OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with over 500,000 members dedicated to defending the principles embodied in the Constitution and our nation's civil rights laws. The ACLU of Missouri is one of the organization's state affiliates. Since its founding in 1920, the ACLU has appeared before the federal courts on numerous occasions, both as direct counsel and as *amicus curiae*. The protection of privacy as guaranteed by the Fourth Amendment is of special concern to the organization. The ACLU has filed *amicus* briefs in a number of location tracking cases, including in the district court below and in *United States v. Jones*, --- U.S. ----, 132 S. Ct. 945 (2012), the decision that is at the core of the issues raised in this case.

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici* and their members contributed money towards the preparation or filing of this brief.

## AUTHORITY TO FILE *AMICUS* BRIEF

Pursuant to Federal Rule of Appellate Procedure 29(a), *amici* have obtained consent from all parties to file this brief.

1

## SUMMARY OF ARGUMENT

This appeal raises the question whether law enforcement agents may attach a GPS device to a car to track its movements—conduct that the Supreme Court unanimously held constitutes a Fourth Amendment search in *United States v. Jones*—without first obtaining a warrant based on probable cause. Warrantless searches are presumptively unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. The district court, however, concluded that the warrantless GPS search at issue here was permissible because the agents had reasonable suspicion. That conclusion is based on a misreading of dicta in *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010). Because none of the recognized exceptions to the warrant requirement applies to GPS tracking, this Court should hold that Robinson's Fourth Amendment rights were violated.

The government contended below that even if probable cause warrants are required for GPS tracking, Robinson's suppression motion should be denied because the FBI agents who installed and monitored the GPS device were acting in "good faith." The district court correctly rejected this contention. Both this Court and the Supreme Court have made clear that to avoid suppression, law enforcement officers must have relied on binding

2

appellate precedent. No such precedent existed here when the search at issue occurred. Instead, the government seeks to rely on out-of-circuit authority and inapposite Supreme Court cases. The rule proposed by the government would erode the privacy protections of the Fourth Amendment and require vexing and standardless post hoc judicial determinations. A bright-line rule that waives the exclusionary rule only when police rely on binding precedent is not only doctrinally required, but practically beneficial to both law enforcement and the courts.

## ARGUMENT

### I. The Warrantless Search of Robinson's Car Violated the Fourth Amendment.

Following the Supreme Court's decision in *Jones*, it is undisputed that the installation and use of the GPS tracker on Robinson's car was a Fourth Amendment search. *See* 132 S. Ct. at 949. Because that search was conducted without a warrant, it was presumptively unreasonable, *see Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)), and this Court should hold that the government violated Robinson's Fourth Amendment rights.

The district court's conclusion—that *United States v. Marquez* established that reasonable suspicion suffices to render such searches constitutional, *United States v. Robinson*, 903 F. Supp. 2d 766, 785-87 (E.D.

Appellate Case: 13-3253    Page: 9    Date Filed: 02/19/2014 Entry ID: 4125176

Mo. 2012)—is mistaken, for two reasons. First, *Marquez*'s Fourth Amendment analysis was limited to the question whether targeted GPS tracking qualifies as a search, not the circumstances under which such a search might be reasonable. Second, the passage from *Marquez* relied upon by the district court is nonbinding dicta.

Furthermore, no exception to the warrant requirement applies in this case. The "automobile exception" does not extend to surveillance that reveals someone's movements over a prolonged period. And the other cases cited by the government to justify abandoning the presumptive warrant requirement for GPS surveillance are inapposite because they involve either "special needs" beyond the government's interest in law enforcement or reduced expectations of privacy.

### A. Warrantless searches are presumptively unreasonable.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "[E]very case addressing the reasonableness of a warrantless search [should begin] with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated

4

exceptions.'" *Gant*, 556 U.S. at 338 (quoting *Katz*, 389 U.S. at 357); *United States v. Claude X*, 648 F.3d 599, 602 (8th Cir. 2011) (same).

Warrants are presumptively required because they "provide[] the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). The process of obtaining a warrant serves a crucial function in and of itself: It prevents the government from conducting searches solely at its discretion. *See Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971). "[Warrants are] not an inconvenience to be somehow 'weighed' against the claims of police efficiency." *Id.*

The warrant requirement's safeguard is particularly important in the context of GPS tracking, which "is cheap in comparison to conventional surveillance techniques and, by design, proceeds surreptitiously." *Jones*, 132 S. Ct. at 956 (Sotomayor, J., concurring); *see also id.* At 963-64 (Alito, J., concurring in the judgment) (noting difficulty and expense of continuous, extended tracking for traditional law enforcement). Thus, if GPS tracking is not subject to a warrant requirement, it can "evade[] the ordinary checks that constrain abusive law enforcement practices: 'limited police resources and

5

community hostility.'" *Id.* At 956 (Sotomayor, J., concurring) (quoting *Illinois v. Lidster*, 540 U.S. 419, 426 (2004)).

**B. *Marquez* did not establish that reasonable suspicion validates the installation and use of a GPS tracking device.**

The district court held that this Court's decision in *United States v. Marquez*, which predates *Jones*, established that "a warrant is not required to install a non-invasive GPS tracking device on a suspect's vehicle for a reasonable period of time, when it is installed while the vehicle is parked in a public place, and the officers have reasonable suspicion that the vehicle is involved in criminal activity." *Robinson*, 903 F. Supp. 2d at 786 (citing *Marquez*, 605 F.3d at 610). Although *Marquez* held that the defendant lacked standing to challenge the use of GPS tracking and expressly stated that no Fourth Amendment search had occurred, 605 F.3d at 609, the district court opined that *Marquez* alternatively established that the warrantless placement and monitoring of a GPS tracking device qualifies as a "reasonable" Fourth Amendment search when undertaken with reasonable suspicion. 903 F. Supp. 2d at 785-86. Because *Jones* expressly declined to reach that issue, 132 S. Ct. at 954, the district court ruled that *Marquez*'s alternative holding remains binding within the Eighth Circuit. 903 F. Supp. 2d at 786.

Appellate Case: 13-3253    Page: 12    Date Filed: 02/19/2014 Entry ID: 4125176

In *Marquez*, this Court considered a defendant's motion to suppress evidence obtained from the warrantless installation and use of a GPS tracker to monitor his movements while he was a passenger in a car. 605 F.3d at 609-10. The court held that the defendant, Acosta, did not have standing to challenge the installation and use of the GPS tracker and further stated that "[e]ven if Acosta had standing [to challenge the GPS monitoring], we would find no error," because "no search has occurred" when "electronic monitoring does not invade upon a legitimate expectation of privacy." *Id.* At 609 (citing *United States v. Knotts*, 460 U.S. 276, 285 (1983)).

Contrary to the district court's conclusion, *Marquez* did not establish that reasonable suspicion validates extended GPS surveillance, for two reasons. First, *Marquez* does not stand for the proposition that the installation and monitoring of a GPS device qualifies as a "reasonable search" under the Fourth Amendment when undertaken with reasonable suspicion. In the passage relied upon by the district court, *Marquez* stated that the electronic monitoring of a vehicle's movements on public streets does not constitute a Fourth Amendment search, because "[a] person traveling via automobile on public streets has no reasonable expectation of privacy in his movements from one locale to another." *Id.* At 609 (citing *Knotts*, 460 U.S. at 281; *United States v. Karo*, 468 U.S. 705, 714-16

7

(1984)). "Consequently," *Marquez* concluded, "when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time." *Id.* At 610. Nowhere did this Court mention the Fourth Amendment standard for determining whether a warrantless search is "reasonable," nor did it to cite to any cases conducting such analysis. But that should come as no surprise. Because *Marquez*'s merits analysis resulted in the conclusion that GPS surveillance does not qualify as a Fourth Amendment search, this Court had no occasion to analyze the circumstances under which such surveillance might be reasonable if it were a search.

Marquez's mention of "reasonable suspicion" was intended only to make clear that although targeted surveillance using GPS trackers does not constitute a search, "wholesale surveillance" of thousands of random cars in a community by law enforcement would raise more significant Fourth Amendment concerns and might therefore qualify as a Fourth Amendment search. *See* 605 F.3d at 610. *Marquez*'s extensive discussion of, and reliance on, *United States v. Garcia* bears out this interpretation. *See id.* (citing *Garcia*, 474 F.3d 994, 998 (7th Cir. 2007)). In *Garcia*, the Seventh Circuit held that the placement of a GPS tracker on the defendant's vehicle did not

Appellate Case: 13-3253    Page: 14    Date Filed: 02/19/2014 Entry ID: 4125176

constitute a Fourth Amendment search or seizure, reasoning that the targeted use of GPS tracking is not materially different from tailing a suspect by car. *See* 474 F.3d at 997-98. The court was careful to add, however, that "[i]t would be premature to rule that … a program of mass surveillance [GPS tracker] could not possibly raise a question under the Fourth Amendment." *Id.* At 998. The court concluded that it was not necessary to determine "whether the Fourth Amendment should be interpreted to treat such mass surveillance *as a search*," because the officers in *Garcia* "do GPS tracking only when they have a suspect in their sights" and "had, of course, abundant grounds for suspecting the defendant." *Id.* At 998 (emphasis added). Similarly here, *Marquez* emphasized that the troubling constitutional concerns posed by "wholesale surveillance" of vehicular movements were not presented, because "there was nothing random or arbitrary about the installation and use of the [GPS] device" at issue. *See* 605 F.3d at 610.

Second, *Marquez*'s merits analysis of the defendant's Fourth Amendment claim was dicta, because this Court's holding was clearly limited to the "standing" inquiry.[1] To be sure, a court may rest its decision

---

[1] Although courts "use the term 'standing' as a shorthand reference to the issue of whether defendants' Fourth Amendment interests were implicated by the challenged government actions[,] [t]echnically, the concept of 'standing' has not had a place in Fourth Amendment jurisprudence [] since .

Appellate Case: 13-3253    Page: 15    Date Filed: 02/19/2014 Entry ID: 4125176

on alternative holdings, all of which are equally binding on future courts. *See, e.g.*, *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949); *Sutton v. Addressograph-Multigraph Corp.*, 627 F.2d 115, 117 n.2 (8th Cir. 1980). But "a contrary-to-fact construction is not the same as an alternative holding." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (concluding that the phrase "*if* the merits *were* reached, the result *would be* the same" did not constitute an alternative holding on the merits, in contrast to a decision finding a petitioner's claims to be unpreserved "and, *in any event*, without merit" (emphases in original)). A court's use of contrafactual phrasing— typified by the subjunctive mood (e.g., "we would hold")—reflects its intention to avoid a binding determination on the topic under discussion.[2] *Marquez*'s careful use of contrafactual phrasing to frame its merits discussion—"*Even if* Acosta had standing, *we would* find no error," 605 F.3d at 609—demonstrates that this Court intended the Fourth Amendment

_____

. . *Rakas v. Illinoi*s." *United States v. Green* 275 F.3d 694, 698 n.3 (8th Cir. 2001) (citing *Rakas*, 439 U.S. 128 (1978)).

[2] *See, e.g.*, *United States v. Macias-Valencia*, 510 F.3d 1012, 1015 (9th Cir. 2007) ("[O]ur use of the subjunctive, 'we would agree,' in nodding to Steward's argument suggests that we were not addressing, and that we could not address, Steward's claim that the mandatory minimum should not apply."); *United States v. Bobo*, 419 F.3d 1264, 1269 (11th Cir. 2005) ("[C]ourts generally do not make a habit of hiding away important holdings in afterthought footnotes or surrounding them with subjunctive constructions ('we would still be') . . . ."); *Netsky v. United States*, 859 F.2d 1, 3 (3d Cir. 1988); *Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 741 (2d Cir. 1987).

Appellate Case: 13-3253    Page: 16    Date Filed: 02/19/2014 Entry ID: 4125176

merits analysis only as dicta. *See United States v. Katzin*, 732 F.3d 187, 196, 201 n.9 (3d Cir. 2013) (characterizing *Marquez*'s Fourth Amendment merits analysis as dicta), *vac'd pending en banc reh'g*, Order, No. 12-2548 (3d Cir. Dec. 12, 2013).[3]

In short, *Marquez* concluded (in dicta) only that targeted GPS surveillance is not a Fourth Amendment search. All nine Justices in *Jones* rejected that conclusion, and five Justices rejected *Marquez*'s reasoning that "[a] person traveling via automobile on public streets has no reasonable expectation of privacy in his movements from one locale to another." *Id.* At 609. As a result, *Marquez*'s rationale has been wholly eclipsed. Its reference to reasonable suspicion is an artifact of the pre-*Jones* legal environment and does not control the disposition of this case.

### C. **No exception to the warrant requirement applies.**

Warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at

---

[3] Pursuant to its internal operating procedures, when the Third Circuit grants a petition for rehearing en banc, it vacates the panel opinion as a matter of course. 3d Cir. I.O.P. 9.5.9 (2010). Nonetheless, this Court may look to the *Katzin* panel opinion as persuasive authority. *See Roe v. Anderson*, 134 F.3d 1400, 1404 (9th Cir. 1998); *Gutter v. E.I. DuPont de Nemours and Co.*, No. 95-2152-CIV-GOLD, 2001 WL 36086589, at *6 (S.D. Fla. Mar. 27, 2001) ("[A] logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district or circuit of origin or its ability to bind." (quoting *In re Finley, et al.*, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993))).

Appellate Case: 13-3253     Page: 17     Date Filed: 02/19/2014 Entry ID: 4125176

357. Because none of those exceptions apply here, the government violated

Robinson's constitutional rights by not securing a probable cause warrant

before attaching a GPS tracker to his vehicle. *See Katzin*, 732 F.3d at 197-

205.[4]

### 1. The automobile exception and its justifications do not apply to location tracking.

The automobile exception allows law enforcement officers to conduct

warrantless searches and seizures of any area of a car that they have

probable cause to believe contains contraband or evidence of criminal

activity. *See California v. Acevedo*, 500 U.S. 565, 579-80 (1991). The

magistrate judge suggested that the exception applies in this case because the

search involved the tracking of a car whose exterior was exposed to plain

view.[5] Second Pretrial Order and Recommendation, Addendum to Br. of

Appellant 42-43. This was error. Neither of the two justifications for the

automobile exception recognized by the Supreme Court has any bearing

here.

---

[4] The *Katzin* panel unanimously held that warrantless attachment and use of a GPS tracker violates the Fourth Amendment. *Id.*; *see also id.* at 217 (Van Antwerpen, J, concurring in part and dissenting in part). The government did not challenge this holding in its petition for rehearing en banc, where it sought review only of the panel's divided opinion on applicability of the good faith exception to the exclusionary rule. Appellant's Petition for Rehearing En Banc 2 n.1, *Katzin*, No. 12-2548 (3d Cir. filed Dec. 4, 2013).
[5] The district court did not address this argument.

Appellate Case: 13-3253     Page: 18     Date Filed: 02/19/2014 Entry ID: 4125176

Under one rationale, the Supreme Court has allowed warrantless searches of vehicles because of "the exigent circumstances that exist in connection with movable vehicles." *Caldwell v. Lewis*, 417 U.S. 583, 590 (1974). "This [concern] is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened." *Id.*; *see also Carroll v. United States*, 267 U.S. 132 (1925). The exception is thus premised on the belief that "'an immediate intrusion is necessary if police officers are to secure the illicit substance.'" *United States v. Ortiz*, 878 F. Supp. 2d 515, 535 (E.D. Pa. 2012). Put otherwise: The automobile exception was established to prevent contraband and physical evidence of a crime from absconding.

Attachment and use of a GPS device provides information about the location of a car, not its contents. But a car's location is neither contraband nor evidence that is at risk of disappearing. Indeed, GPS tracking is facilitated, not thwarted, by vehicles' mobility. To be sure, in cases of actual exigency—for example, where police have good reason to believe that the vehicle will disappear before a warrant can be obtained—no warrant may be required for the initial attachment of a GPS device. *See, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (holding that a warrantless search is permissible where "the exigencies of the situation" make the search

13

"objectively reasonable"). Even then, however, no exigency would prevent law enforcement officials from promptly applying for a warrant to continue GPS tracking after the device is installed.

The Supreme Court's second rationale justifying warrantless searches of motor vehicles, reduced expectations of privacy, is equally inapplicable to GPS searches. The Court has explained that people have reduced expectations of privacy in their cars because of "pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 392 (1985). But GPS searches do not intrude upon expectations of privacy about cars; they intrude upon expectations of privacy about drivers' and passengers' locations over time.[6] *United States v. Maynard*, 615 F.3d 561-62 (D.C. Cir. 2010); *see also Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring). And at least five Justices believe that technologically advanced tracking of a person's location can in fact violate reasonable expectations of privacy. *See Jones*, 132 S. Ct. at 957, 964 (Alito, J., concurring in the judgment) ("Longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy."); *id.* At 955 (Sotomayor, J., concurring). Moreover, *Jones* held that attachment

---

[6] *See* Tr.-Vol.-6 24-55 (Special Agent Comeau's testimony detailing *Robinson's* movements over the course of multiple days based on GPS tracking data).

Appellate Case: 13-3253     Page: 20     Date Filed: 02/19/2014 Entry ID: 4125176

and use of a GPS tracker constitutes a search because it is trespassory. *Id.* At 949. Under this view, it is irrelevant that vehicles are pervasively regulated; the physical trespass that constitutes the search also triggers the warrant requirement.

The automobile exception would have permitted police to enter Robinson's car to recover "evidence already present" in it; "[i]t would not (and, indeed, did not) permit them to leave behind an ever-watchful electronic sentinel in order to collect future evidence. . . . [T]o hold otherwise . . . would unduly expand the scope of the automobile exception well past its 'specifically established and well delineated' contours . . . ." *Katzin*, 732 F.3d at 204.

## 2. GPS searches by law enforcement do not fall within a "special need."

The Supreme Court has recognized that certain searches outside the scope of traditional law enforcement, or aimed at categories of people under circumstances where they enjoy reduced expectations of privacy, may not require probable cause warrants. While the government cited to these precedents in arguing that GPS tracking should be exempted from the Fourth Amendment's warrant requirement, Gov't's Resp. to Def.'s Mot. To Suppress 2-4, ¶¶ 4-6, Doc. 70, a review of these exceptions and their

15

underlying justifications makes plain that they are inapplicable to GPS tracking of the sort at issue here.

Exemption from the warrant requirement under the special needs exception is justified "[o]nly in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *O'Connor v. Ortega*, 480 U.S. 709, 720 (1987) (plurality opinion) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)); *see also Ferguson v. City of Charleston*, 532 U.S. 67, 73 & n.7 (2001). GPS searches by law enforcement for the purpose of investigating criminal suspects, as occurred here, cannot be justified under this rationale.

Many of the cases the government cited to the contrary are "special needs" cases. Some involve regulating immigration and controlling border security, both government interests long viewed as beyond the scope of criminal law enforcement. *See United States Martinez-Fuerte*, 428 U.S. 543, 551-52 (1976); *see also United v. Flores-Montano*, 541 U.S. 149, 155 (2004).

Other cases relied upon by the government upheld exemptions from the warrant and probable-cause requirement on the ground that the subjects of the searches had reduced expectations of privacy. For example, the

16

Supreme Court has upheld warrantless searches of parolees and probationers on a "reasonable suspicion" standard because, inter alia, those individuals remain subject to state controls. *See Samson v. California*, 547 U.S. 843, 850 (2006) (parolees); *United States v. Knights*, 534 U.S. 112, 119-21 (2001) (probationers). Those precedents cannot provide a categorical exemption from the warrant requirement for GPS tracking of ordinary criminal suspects. *See Katzin*, 732 F.3d at 199-200.

Still other cases cited by the government concern the *Terry* exception, which allows both warrantless temporary stops for a brief on-the-spot investigation upon articulable suspicion of contemporaneous criminal activity and protective frisks for officer safety. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see also Maryland v. Buie*, 494 U.S. 325 (1990); *United States v. Place*, 462 U.S. 696, 706 (1983). These cases are distinguishable from GPS searches, both because there is no "officer safety" rationale for GPS tracking and because such tracking is significantly more invasive of the target's reasonable expectation of privacy than the minimal intrusions identified in *Terry* and its progeny. *See, e.g.*, *Katzin*, 732 F.3d at 200 ("A GPS search, in contrast [to a *Terry* frisk], is an ongoing, vastly broader endeavor.").[7]

---

[7] The government's reliance on *New Jersey v. T.L.O.*, 469 U.S. at 341-42 (upholding the search of a public school student based on reasonable suspicion), is similarly misplaced both because school safety is a legitimate

Appellate Case: 13-3253     Page: 23     Date Filed: 02/19/2014 Entry ID: 4125176

In short, GPS searches of the kind at issue here are wholly unrelated to any of the special needs rationales recognized by the Supreme Court. Their purpose is to arrest and convict criminals, not to deter dangerous conduct. And they are directed not at discrete groups with reduced privacy expectations, but at any person suspected of a crime—the very class the First Congress and the People sought to protect by adopting the Fourth Amendment.

The government tips its hand when it argues that it should not be required to show probable cause to utilize GPS tracking, because it often must use GPS tracking to establish probable cause. Gov't's Resp. to Def.'s Mot. To Suppress 4-5, ¶ 8. That is not a "special need," but rather impermissible bootstrapping. *See Katzin*, 732 F.3d at 199. Doubtless, the government would find it useful to employ warrantless wiretaps or home searches to establish probable cause for an arrest, but mere usefulness or expedience is not the standard for dispensing with the warrant requirement. No existing exception to the warrant requirement applies, and none can or should be created to cover GPS tracking.

---

need beyond traditional law enforcement and because children in school have reduced expectations of privacy. *See id.* at 340.

Appellate Case: 13-3253    Page: 24    Date Filed: 02/19/2014 Entry ID: 4125176

## II. The District Court Correctly Held That the Good-Faith Exception to the Exclusionary Rule Does Not Apply Because the FBI Agents Did Not Rely on Binding Appellate Precedent.

### A. Clear Precedent Supports the District Court's Conclusion.

Faithfully applying *Davis v. United States*, 131 S. Ct. 2419 (2011), the district court properly held that the exclusionary rule is applicable to unconstitutionally obtained GPS evidence in this case. *Davis* is the latest in a line of cases that has examined whether the exclusionary rule applies when police rely in objective good faith on binding legal authority. After carefully considering the costs and benefits of exclusion, the Supreme Court determined that the exclusionary rule does not apply to "searches conducted in objectively reasonable reliance on binding appellate precedent." *Id.* at 2423-24. The government advocates for a broader exception—one that would permit reliance on any body of persuasive, unsettled law, or on inapposite cases addressing outdated technologies. This unjustified reading would subvert *Davis*'s clear holding, exceed the bounds of the exclusionary rule, and prove unworkable in practice.

In *Davis*, while the defendant's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009), which announced a new rule governing automobile searches incident to arrest. *Gant* expressly narrowed *New York v. Belton*, 453 U.S. 454 (1981), and thus overruled the

19

Eleventh Circuit decision in *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996), which relied on a broad reading of *Belton* in authorizing warrantless automobile searches even after the defendants were secured. *See Gant*, 556 U.S. at 348. Davis conceded on appeal that the police had "fully complied with 'existing Eleventh Circuit precedent,'" namely *Gonzalez*. *Davis*, 131 S. Ct. at 2426. The Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* At 2423-24.

Applying *Davis*'s clear rule, the district court correctly held that the good faith exception does not apply when law enforcement agents were not acting in accordance with binding precedent. *Robinson*, 903 F. Supp. 2d at 783-85. *Davis* is simply inapplicable where there was no binding circuit precedent authorizing a search at the time it occurred. Justice Alito's opinion for the Court refers to "binding" authority at numerous points, *see Davis*, 131 S. Ct. at 2423, 2428, 2432, 2434, does not mention any source of law more permissive than "binding appellate precedent," and even implies a different result for "defendants in jurisdictions in which the question remains open." *Id.* at 2433; *see also id.* at 2435 (Sotomayor, J., concurring in the judgment) (clarifying that the "markedly different question" of whether the exclusionary rule applies when the law relied upon was unsettled was not

Appellate Case: 13-3253     Page: 26     Date Filed: 02/19/2014 Entry ID: 4125176

before the Court). Further confirming the clarity of *Davis*'s rule is the reasoning of the Eleventh Circuit panel, whose decision the Supreme Court affirmed:

> We stress, however, that our precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation. We have not forgotten the importance of the "incentive to err on the side of constitutional behavior," and we do not mean to encourage police to adopt a "let's-wait-until-it's-decided approach" to "unsettled" questions of Fourth Amendment law.

*United States v. Davis*, 598 F.3d 1259, 1266-67 (11th Cir. 2010) (quoting *United States v. Johnson*, 457 U.S. 537, 561 (1982)), *aff'd* 131 S. Ct. 2434 (2011).

This Court recently clarified that *Davis* means what it says: "For the good faith exception to apply, officers performing a particular investigatory action—such as GPS tracking—must *strictly comply* with binding appellate precedent governing the jurisdiction in which they are acting." *United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013) (emphasis added). In *Barraza-Maldonado*, police attached a GPS device to the suspect's car within the Ninth Circuit, after "the Ninth Circuit had repeatedly held that installation of such a device on a car did not constitute a Fourth Amendment search." *Id.* at 867-68. Therefore, the good faith exception applied. Here, in contrast, when the FBI installed its tracker on Robinson's car, this Court had

yet to address the issue—it would be another four months before this Court would issue its opinion in *Marquez*. Whether GPS tracking constituted a search was exactly the type of open and equivocal legal question that the *Davis* Court placed outside the good faith exception's scope.

Indeed, the Seventh Circuit has addressed this precise point, concluding that the good faith exception under *Davis* does not insulate the warrantless attachment of a GPS device carried out within the Eighth Circuit prior to issuance of the Circuit's opinion in *Marquez*. *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013) (per curiam). In the course of investigating a bank robbery in Burlington, Iowa, police attached a GPS device to Martin's car without a warrant on November 19, 2009—six months before this Court issued its decision in *Marquez*. *United States v. Martin*, No. 4:10-cr-40008, slip op. at 1-2 (C.D. Ill. Sept. 18, 2012), *rev'd*, 712 F.3d at 1082. Several days later, police tracked Martin's car as it travelled into Illinois, and a Henderson County, Illinois Sheriff's Deputy (working with two Burlington, Iowa detectives) stopped the car. *Id.* The district court held that the good faith exception applied because Iowa police could have reasonably relied on a single out-of-circuit opinion, *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007), and on the Supreme Court's 1983 opinion concerning beeper technology in *Knotts*, when they attached the

22

GPS tracker without a warrant. *Id.* At 8-11. The Seventh Circuit reversed,

stating that *Davis* applies "only to 'a search [conducted] in objectively

reasonable reliance on *binding appellate precedent*.'" 712 F.3d at 1082

(quoting *Davis*, 131 S. Ct. at 2434) (alteration and emphasis in original).

Rejecting the district court's reliance on out-of-circuit caselaw and on

*Knotts*, the court explained:

> [W]e are bound to continue applying the traditional remedy of
> exclusion when the government seeks to introduce evidence
> that is the "fruit" of an unconstitutional search. We reject the
> government's invitation to allow police officers to rely on a
> diffuse notion of the weight of authority around the country,
> especially where that amorphous opinion turns out to be
> incorrect in the Supreme Court's eyes. Here, as Martin points
> out in his supplemental brief, there was no binding appellate
> precedent in the Eighth Circuit at the time that Iowa law
> enforcement officials attached the GPS device to Martin's car.

*Id.*

 It is irrelevant to the *Davis* analysis that, at the time agents attached

the GPS device to Robinson's car, two courts of appeals had held that

warrantless attachment of GPS devices did not constitute a search. *See*

*United States v. Pineda-Moreno*, 591 F.3d 1212, 1216-17 (9th Cir. 2010);

*Garcia*, 474 F.3d at 997-98. As a panel of the Third Circuit has explained,

"extending the rationale from *Davis* to cover reliance on out-of-circuit

precedent would turn [*Davis*] on its head." *Katzin*, 732 F.3d at 208. Relying

on the opinions of other circuits "would eviscerate the notion that clear and

23

well-settled precedent should control" and would "burden district courts" with an amorphous and standardless case-by-case assessment of "how many circuits had addressed the police practice in question, what each one had said, whether the statements were mere dicta, and myriad other factors." *Id.* At 208-09. This critique is particularly compelling where, as here, only a small minority of circuits had spoken.[8] Because *Davis* only excuses objective good faith reliance on binding appellate precedent, the government's call for an extension to merely persuasive authority is unavailing.

The risks to privacy inherent in rapid technological change also show the prudence of refusing to extend *Davis*'s good faith exception. In its briefing below, the government repeatedly cited two cases involving decades-old technology in support of its argument that warrantless GPS tracking is constitutionally reasonable: *Karo*, 468 U.S. at 712 (upholding the conveyance by police of a beeper, which transmitted no information, to the

---

[8] That the D.C. Circuit had not yet decided *Maynard* at the time the GPS device was attached to Robinson's car does not change the calculus. The Second and Seventh Circuits have concluded that even when a search occurred before *Maynard* created a circuit split, only binding in-circuit or Supreme Court precedent will suffice to trigger the good faith exception under *Davis*. *United States v. Aguiar*, 737 F.3d 251, 261-62 (2d Cir. 2013) (reliance on out-of-circuit precedent not reasonable when GPS device attached more than 18 months before *Maynard* was decided); *Martin*, 712 F.3d at 1082 (good faith exception not implicated by GPS search conducted more than seven months before *Maynard* was decided).

Appellate Case: 13-3253     Page: 30     Date Filed: 02/19/2014 Entry ID: 4125176

suspect); and *Knotts*, 460 U.S. at 278 (approving following a suspect's car, with the help of a beeper that could perform no independent tracking and that required close distance to operate). Accepting the argument that these cases authorized GPS tracking—a technology not yet in existence when they were decided—would both contradict the Supreme Court's views on changing technology and undermine the purpose of the good faith exception. In these cases and elsewhere, the Court has recognized that Fourth Amendment holdings authorizing certain technological tools should not be unduly extended. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("We have previously reserved judgment as to how much technological enhancement of ordinary perception . . . is too much."); *Knotts*, 460 U.S. at 283-84. Moreover, there is a special danger in recognizing good faith reliance on precedents as old as *Karo* and *Knotts*, when they are based on then-existing technological considerations. As the district court recognized, "[t]he need for caution in this age of developing technology should be clear. . . . [O]ne may not simply assume that prior case law authorizes conduct when it deals with different technology, is perhaps installed in a different fashion, or permits a different degree of intrusion." *Robinson*, 903 F. Supp. 2d at 785.

Appellate Case: 13-3253    Page: 31    Date Filed: 02/19/2014 Entry ID: 4125176

The circuits have split on whether *Knotts* and *Karo* can constitute

binding appellate precedent authorizing attachment of GPS devices. The

Seventh and Third Circuits reject the argument that it was reasonable to rely

on the beeper cases to conduct warrantless GPS tracking. *Martin*, 712 F.3d

at 1082; *Katzin*, 732 F.3d at 206 ("[W]e find that the explicit holding from

*Davis* is inapposite because *Knotts* and *Karo* are both distinguishable given

(1) the lack of a physical intrusion in those cases, (2) the placement by

police of the beepers inside containers, and (3) the marked technological

differences between beepers and GPS trackers."). The First and Second

Circuits take the contrary position. *Aguiar*, 737 F.3d at 261-62; *United

States v. Sparks*, 711 F.3d 58, 66 (1st Cir. 2013).[9] As all of the Justices

agreed in *Jones*, however, it was not necessary for the Court to overrule

either *Knotts* or *Karo* to conclude that attaching a GPS device to a car and

monitoring the car's movements for 28 days was a search. *Jones*, 132 S. Ct.

at 951-52 (majority opinion); *id.* At 964 (Alito, J., concurring). The beepers

---

[9] The Fifth and Eleventh Circuits hold that police could reasonably rely on a Fifth Circuit opinion stating that warrantless attachment of an "electronic tracking device" to the exterior of a vehicle is not a search. *United States v. Smith*, --- F.3d ----, 2013 WL 6728097, at *7-12 (11th Cir. Dec. 23, 2013) (relying on *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) (en banc), and explaining that *Michael* is binding on the Eleventh Circuit); *United States v. Andres*, 703 F.3d 828, 835 (5th Cir. 2013). Unlike *Knotts* and *Karo*, *Michael* arguably reached the Fourth Amendment question later decided in *Jones*.

Appellate Case: 13-3253     Page: 32     Date Filed: 02/19/2014 Entry ID: 4125176

in *Knotts* and *Karo* were not installed pursuant to a physical trespass, were not used for long-duration tracking, and provided only limited, imprecise information. Given that the surveillance the officers carried out here is indistinguishable from that which took place in *Jones*, and *Jones* expressly did not overrule *Knotts* or *Karo*, it cannot be that those cases constituted binding precedent authorizing the agents' conduct here.

District courts in multiple circuits where there was no binding circuit law on GPS searches when police conducted them have adopted the proper view of how *Davis* applies to GPS searches conducted before *Jones*, declining to apply the good faith exception to the exclusionary rule. *See, e.g.*, *United States v. Ventura*, No. 10-0770, 2013 WL 1455278, at *21 (D. Md. Apr. 8, 2013); *United States v. Lujan*, No. 2:11-CR-11, 2012 WL 2861546, at *3 (N.D. Miss. July 11, 2012); *Ortiz*, 878 F. Supp. 2d at 539-43; *United States v. Lee*, 862 F. Supp. 2d 560, 570-71 (E.D. Ky. 2012); *United States v. Richard*, No. 2:09-992-PMD, slip op. at 9 (D.S.C. Apr. 12, 2012), *aff'd* 528 F. App'x 323 (4th Cir. 2013) (per curiam).[10] Where circuit law specifically authorized warrantless GPS tracking prior to *Jones*, on the other hand, courts have applied *Davis* to deny motions to suppress the evidence.

---

[10] Other district courts have disagreed. *See, e.g.*, *United States v. Rose*, 914 F. Supp. 2d 15, 22-24 (D. Mass. 2012); *United States v. Oladosu*, 887 F. Supp. 2d 437, 442-48 (D.R.I. 2012).

Appellate Case: 13-3253    Page: 33    Date Filed: 02/19/2014 Entry ID: 4125176

*See*, *e.g.*, *Barraza-Maldonado*, 732 F.3d at 867-68; *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090-91 (9th Cir. 2012). These cases are straightforward applications of *Davis*, relying on binding appellate precedent authorizing the precise practice at issue—warrantless attachment of GPS trackers—rather than on cases addressing older technologies used in different ways.

The line of exclusionary rule cases leading to *Davis* supports the district court's conclusion. *Davis* grew out of two other good faith exception cases. *See Illinois v. Krull*, 480 U.S. 340, 349-50 (1987) (exempting searches conducted in reliance on later overturned statutes); *United States v. Leon*, 468 U.S. 897 (1984) (doing the same for later invalidated warrants). These cases share a common element that the government's interpretation of *Davis* cannot sustain: All involve sources of law that "specifically *authorize[]* a particular police practice." *Davis*, 131 S. Ct. at 2429. No Supreme Court or Eighth Circuit case specifically authorized the warrantless installation and monitoring of GPS trackers at the time of the search at issue, so the exclusionary rule must apply to the evidence that this search produced. The Fourth Amendment error here lies not with an authoritative third party—a magistrate, legislature, or appellate court with direct authority—but rather

Appellate Case: 13-3253     Page: 34     Date Filed: 02/19/2014 Entry ID: 4125176

with law enforcement officers who gambled on their choice not to seek a warrant to conduct an invasive search. *See Davis*, 131 S. Ct. at 2428.

The rule that *Davis* set forth promotes clear, system-wide knowledge of what is permissible and what is not, eliminating the constitutional violations that result from erroneous guesswork. Suppressing the evidence in this case will result in "'appreciable deterrence'" of unconstitutional searches, thus serving the central goal of the good faith exception cases. *Leon*, 468 U.S. at 909.

## B. A Clear Rule is Constitutionally Superior to a Murky One.

A clear rule not only deters police misconduct and negligence, it is also far more practicable for law enforcement and efficient for the courts. The muddled standard proposed by the government would complicate the work of police and prosecutors, for whom bright-line rules provide great benefits. *See, e.g., Thornton v. United States*, 541 U.S. 615, 620-24 (2004) (reasoning that rules requiring ad hoc determinations by police are impracticable); *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001) ("[A] responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations . . . lest every discretionary judgment . . . be converted into an occasion for constitutional

Appellate Case: 13-3253    Page: 35    Date Filed: 02/19/2014 Entry ID: 4125176

review."). The Supreme Court has already drawn this bright line; this Court should decline the government's invitation to muddy it.

For example, *Davis*'s clear rule relieves courts and police of the difficult line drawing problem rooted in the depth and breadth of potentially relevant sources of law available under a standard requiring only a good faith guess at what unsettled law will later become. *See Katzin*, 732 F.3d at 209-10. The systemic risk posed by leaving these questions to retrospective adjudication of good faith unguided by any specific touchstone, such as a warrant, statute, or binding appellate precedent, would "yield[] an unworkable framework," *Robinson*, 903 F. Supp. 2d at 784, and undermine the very foundations of the Fourth Amendment. Consistent with *Davis,* the single source of developing law on which officers should be allowed to rely without risking exclusion is binding appellate precedent.

## C. The Court Should Reach the Fourth Amendment Questions Regardless Whether the Good Faith Exception Applies.

This Court should decide whether a GPS search requires a probable cause warrant irrespective of its decision on the proper scope of *Davis.* When a case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates, there is sufficient reason for the Court to decide the violation issue *before* turning to the good-faith question." *Illinois v. Gates*, 462 U.S. 213, 264, 265 n.18

30

(1983) (White, J., concurring) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). This is just such a case. GPS devices have become a favored tool of law enforcement, and their highly intrusive nature cries out for clear judicial regulation.

In *United States v. Warshak*, the Sixth Circuit explained the value of addressing important Fourth Amendment issues even when the good faith exception will ultimately apply:

> Though we may surely do so, we decline to limit our inquiry to the issue of good-faith reliance. If every court confronted with a novel Fourth Amendment question were to skip directly to good faith, the government would be given *carte blanche* to violate constitutionally protected privacy rights, provided, of course, that a statute supposedly permits them to do so. The doctrine of good-faith reliance should not be a perpetual shield against the consequences of constitutional violations. In other words, if the exclusionary rule is to have any bite, courts must, from time to time, decide whether statutorily sanctioned conduct oversteps constitutional boundaries.

631 F.3d 266, 282 n.13 (6th Cir. 2010).

The Sixth Circuit's logic is not novel. Courts frequently decide whether there has been a Fourth Amendment violation before applying the good faith exception. For example, this Court recently analyzed whether officers' search of the defendant's vehicle violated the Fourth Amendment pursuant to *Arizona v. Gant*, and only then applied the good faith exception to the exclusionary rule. *United States v. Casteel*, 717 F.3d 635, 646 (8th Cir. 2013). This approach is no less appropriate in the GPS-tracking context.

Appellate Case: 13-3253    Page: 37    Date Filed: 02/19/2014 Entry ID: 4125176

*See United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049, at *7-11 (E.D. Tenn. Oct. 30, 2012) (determining that warrantless GPS tracking violates the Fourth Amendment, and then applying the good faith exception).

The *Jones* court was unable to rule on the applicability of the presumptive warrant requirement to GPS searches because the government had forfeited its position on the issue. 132 S. Ct. at 954. The issue is now before this Court. Addressing it would yield much needed clarity in this Circuit.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's decision denying Robinson's motion to suppress.

Respectfully submitted,

Dated: February 19, 2014

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT
American Civil Liberties Union
   of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Tel: (314) 652-3114
Fax: (314) 652-3112

Appellate Case: 13-3253   Page: 38   Date Filed: 02/19/2014 Entry ID: 4125176

Nathan Freed Wessler
Brian Hauss
Catherine Crump
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654

Appellate Case: 13-3253    Page: 39    Date Filed: 02/19/2014 Entry ID: 4125176

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because:

   This brief contains 6,976 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated by the word-counting feature of Microsoft Office 2010.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.


Dated: February 19, 2014                    /s/ Anthony E. Rothert
                                            ANTHONY E. ROTHERT

Appellate Case: 13-3253    Page: 40    Date Filed: 02/19/2014 Entry ID: 4125176

## CERTIFICATE OF SERVICE

I, Anthony E. Rothert, do hereby certify that I have filed the foregoing Appellants' Brief electronically with the Court's CM/ECF system with a resulting electronic notice to all counsel of record on February 19, 2014. I further certify that one true and correct paper copy of the Brief, upon receiving notification from the Court that the electronic version of the Brief has been accepted and docketed, will be sent via first-class mail to counsel of record.

/s/ Anthony E. Rothert

Appellate Case: 13-3253     Page: 41     Date Filed: 02/19/2014 Entry ID: 4125176