IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 13-3253

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

FRED ROBINSON,

Appellant.

Appeal from the United States District Court
Eastern District of Missouri
District Court No. 4:11CR361-AGF

The Honorable Audrey G. Fleissig,
United States Judge, Presiding

**REPLY BRIEF OF APPELLANT**

DIANE DRAGAN
FELICIA JONES
Assistant Federal Public Defenders
1010 Market Suite 200
St. Louis, Missouri 63101
(314) 241-1255
ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ 4

STATEMENT OF FACTS ....................................................................................... 6

ARGUMENT

1. The trial court wrongly submitted Counts 4-8 to the jury, because:

    A. The evidence did not show Robinson to be an agent or employee of the governmental entity receiving the jurisdictionally predicate $10,000 of federal benefits under §§666(a) (1)–(b) ................................................................. 8

    B. No agency nexus existed between the Parking Division in the Treasurer's Office (a County agency) and the municipal Government led by the Mayor that received HUD grants for the Homeless. .................... 14

    C. §666(a)(1)(A) violates the Tenth Amendment as applied to Robinson for the allegedly fraudulent receipt of parking meter funds in a state created division of a county office based on federal homeless benefits granted to a separate municipal government for which he had no authority to act or other agency relationship ................................................. 16

2. The District Court erred in admitting a lay witness's legal opinion on the ultimate issue of whether the defendant was an agent of the City ......................... 17

3. The district court committed instructional error by

    A. Refusing to Give Either Theory of Defense Instructions D or E that if the jury did not find Defendant to be an agent of the entity receiving federal funds, it must acquit him of Counts 4-8 ........................................... 20

Appellate Case: 13-3253    Page: 2    Date Filed: 05/02/2014    Entry ID: 4150195

B     Denying Instruction C that to be an agent of the City, one must have authority to act on its behalf with respect to its funds, and instead giving instructions 22 and 15 that the federal funds requirement is proved by their mere receipt ........................................................ 21

4.    The GPS search violated Robinson's Fourth Amendment receipt ......................... 23

5.    The Court wrongly denied severance (a) to cure improper joinder of dissimilar crimes under Fed. R. Evid. 8(a) and (b) to avoid the prejudice the diverse proof and defenses posed in a joint trial under Fed. R. Evid. 14(a) .......... 30

6.    The District Court erroneously denied *Batson* challenges ...................................... 33

7.    The Court based its choice of prison to punish Robinson for not confessing ........ 34

8.    The Court granted double-recovery in DESE's restitution award ........................... 35

CERTIFICATES OF SERVICE AND COMPLIANCE ................................................... 36

Appellate Case: 13-3253    Page: 3    Date Filed: 05/02/2014 Entry ID: 4150195

# TABLE OF AUTHORITIES

**CASES:** <span style="float:right">**Page**</span>

## Supreme Court Cases

*Davis v. United States,* 131 S.Ct. 2419 (2011) ................................................................26
*Fischer v. United States*, 529 U.S. 667 (2000) .......................................................... 16, 17
*Gall v. United States*, 552 U.S. 38 (2007) ......................................................................35
*Maryland v. Buie*, 494 U.S. 325 (1990)............................................................................24
*Miller-El v. Dretke*, 545 U.S. 231 (2005) ........................................................................33
*Nelson v. United States*, 555 U.S. 350 (2009) .................................................................34
*New Jersey v. T.L.O.,* 469 U.S. 325 (1985) .....................................................................23
*United States v. Herring*, 555 U.S. 135 (2009) ...............................................................29
*United States v. Jones*, 132 S.Ct. 945 (2013) .............................................24, 25, 26, 27
*United States v. Karo*, 468 U.S. 705 (1984) ...................................................................27
*United States v. Knights*, 534 U.S. 112 (2001) ...............................................................23
*United States v. Knotts*, 460 U.S. 276 (1983) .................................................................27
*United States v. Leon*, 468 U.S. 897 (1984) ...................................................................29
*United States v. Place*, 462 U.S. 696 (1983) ..................................................................24
*Webster v. Fall*, 266 U.S. 507 (1925) .............................................................................35

## United States Court of Appeals Cases

*Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409 (8th Cir. 1987) ...........................................18
*United States v. Barraza-Maldonado*, 732 F.3d 865 (8th Cir. 2013) ...............................26
*United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013) .................................................36
*United States v. Cornelison*, 717 F.3d 623 (8th Cir. 2013) ..............................................27
*United States v. Davis*, 103 F.3d 660 (8th Cir. 1996)......................................................32
*United States v. Garrett*, 648 F.3d 618 (8th Cir. 2011) ...................................................30
*United States v. Hines*, 541 F.3d 833 (8th Cir. 2008)........................................ 16, 21, 22
*United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010) .................................................26
*United States v. Ness*, 665 F.2d 248 (8th Cir. 1981) .......................................................18
*United States v. Nettles*, 476 F.3d 508 (7th Cir. 2007) ....................................................31
*United States v. Overbey*, 696 F.3d 702 (8th Cir. 2012) ............................................34, 35
*United States v. Panice*, 598 F.3d 426 (7th Cir. 2010) ....................................................34
*United States v. Peery*, 977 F.2d 1230 (8th Cir. 1992) ..............................8, 10, 19, 21, 22
*United States v. Petty*, 98 F.3d 1213 (10th Cir. 1996)......................................................15
*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000) ........................................15, 16, 22
*United States v. Randazzo*, 80 F3d 623 (1st Cir. 1996) ............................................30, 31

Appellate Case: 13-3253    Page: 4    Date Filed: 05/02/2014  Entry ID: 4150195

*United States v. Santopietro*, 166 F.3d 88 (2nd Cir. 1999) ................................. 17

*United States v. Smith*, 591 F.3d 974 (8th Cir. 2010) .......................................... 18

*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009) .......................................... 18

*United States v. Willie Frank Stokes*, No. 13-1779 (8th Cir., April 29, 2014) ................. 34

*United States v. Hang Le-Thy Tran*, 433 F.3d 472 (6th Cir. 2006) ...................... 31

*United States v. Whitehill*, 532 F.3d 746 (8th Cir. 2008) .................................... 22

*United States v. Whitted*, 11 F.3d 782 (8th Cir. 1993) ........................................ 19

## United States Constitution Provisions

U.S. Const. Amend IV ...................................................................... 23, 24, 26, 28

U.S. Const. Amend. X ................................................................................ 16

## United States Statutes:

18 U.S.C. §666 ................................................ 8, 9, 12, 16, 17, 18, 19, 21, 22

## Federal Rules:

Fed. R. Evid. 701 .................................................................................... 18

## Other References:

Mission, Offices of the U.S. Attorneys, U.S. DOJ, accessible at
http://www.justice.gov/usao/about/mission.html ........................................... 29

Appellate Case: 13-3253    Page: 5    Date Filed: 05/02/2014 Entry ID: 4150195

## STATEMENT OF THE CASE

The government invites false impressions by its unqualified assertions that Robinson "was authorized to act on the City's behalf and was a public servant of the City and its people" based on Richard Frank's challenged opinion testimony at Tr-Vol-6, 156-57. (Appellee's Br. 15, 16). Frank qualified his opinion that Robinson and other county workers like Sheriffs and Circuit Attorneys constituted agents acting on behalf of the "City of St. Louis," to mean that their work benefited "the boundary and all the citizens encompassed in the City of St. Louis[.]" (Tr-Vol-6 142, 165). Frank denied that such employees constituted agents of the City government led by the Mayor that received federal money. (Tr-Vol-6 165).

The government also confuses the record by asserting that Robinson's salary "originated" in the City's "main clearing account," and by declaring that the "funds and monies in the Parking Division account belong to the City." (Appellee's Br 14, 15). The operation and financing of the Parking Division comes from its user fees – parking meter revenues. (Tr-Vol-6 7, 12, 144). For purposes of practicality, the Treasurer's Office and the other independent governmental agencies serving the city like the Sheriff's Office and the Circuit Attorneys share payroll and Information Technology with the separate municipal government. (Tr-Vol-6 143, 145-146). Because the Parking Division does not have its own checking account, the City's clearing account gives funds to the payroll clearing account, which cuts

6

the payroll checks, and then the Parking Division's bank account refunds the City's clearing account, all in a circular process. (Tr-Vol-6 12). Beverly Fitzsimmons of the St. Louis Comptroller's Office defined "enterprise fund" as an accounting device by which the comptroller accounted for the Parking Division's money. (Tr-Vol-6 6-7). "Enterprise funds" operate "like a business rather than a government" and their monies come from "user fees" (Tr-Vol-6 6-7), in this case meaning parking meter revenues. (Tr-Vol-6 12). While Fitzimmons answered "yes" when the prosecutor asked if Parking Division funds belonged to the City, she confirmed that meter revenues paid Parking Division salaries. (Tr-Vol-6 8, 12). This hardly means Parking Division wages "originate" in the City's main clearing account. The government also misstates who the Parking Division funds "belong to." (Appellee's Br. 14). The county Treasurer's Office controls the money and may transfer "up to 40 percent" of the surplus to the City (Tr-Vol-6 7).

7

## ARGUMENT

1.    A.  The court wrongly submitted Counts 4-8 on evidence that did not prove Robinson was an agent of the government receiving federal benefits.

Richard Franks expressly did *not* testify that Robinson worked "as an agent or employee of the government or agency that receives the federal funds that provide the basis for federal jurisdiction" under 18 U.S.C. §666(a)(1) – (b). *United States v. Peery*, 977 F.2d 1230, 1232 (8th Cir. 1992). Rather, Franks testified that Robinson and other employees of county offices constituted agents in that their work benefited, and they were authorized to act on behalf of, the "people of St. Louis," meaning the "boundary and all the citizens encompassed in," the City of St. Louis. (Tr-Vol-6 142, 157). Citizens do not a government make under §666(b).

The government's manipulation of the terms "agent" and "City of St. Louis" exploits St. Louis's unique status as a City not within a county. Mo. Rev. Stat. § 82.485.1 (Tr-Vol-6 142). Its residents receive services from workers in state and county offices, like the Parking Division, but whose salaries are not paid by municipal tax revenues. (*Id*.; Tr-Vol-V 111-112). The government's appellate brief perpetuates the semantic games by which it misled the district court and the jury into wrongly conflating any public employee whose work inures to the benefit of "the boundary and all the citizens encompassed in the City of St. Louis," (Tr-Vol-6

8

156-57, 158-60, 165, Addendum 126-27) with the statutory definition in §666(a)(1) – (b) of an agent of a local government receiving federal program money. The same semantic gamesmanship defined the prolonged march to trial, as the government had to remove all facts relating to Robinson's actual employment through a succession of indictments, in the hope of expanding §666 to fit whatever facts might appear at trial. On appeal, the government's brief uses Frank's broader, non-statutory agency definition (encompassing any public employee who helps citizens of St. Louis) interchangeably with the strict statutory definition of agent §666 requires. *See, e.g.,* Appellee's Br. 27 ("the evidence proved unequivocally that he was an agent of the City, authorized to act on behalf of the City, a government that received in excess of $10,000 in federal grants during each of the charged years," no record citations); *id.* at 30-31 ("The Director of Personnel was unequivocal when he testified that Robinson along with all other employees of the Parking Division, was an agent of the city of St. Louis, authorized to act on the City's behalf," no record citations).

The government's omission of record citations in Point 1 when referring to Robinson as an agent – even in the face of a sufficiency challenge -- betrays its recognition that Frank's testimony did not satisfy the statutory element. So, too, does its failure to acknowledge, much less answer, this Court's articulation of §666's requirement that one must "be an agent or employee of the government or

9

agency that receives the federal funds that provide the basis for federal jurisdiction," *Peery*, 977 F.2d at 1232.

The government instead denies that it changed tactics mid-trial from claiming Robinson fit the statutory definition of agency as an "employee" of the City, after its own witnesses consistently refuted that notion. Appellee's Br. 29-30. Its paper trail and the record, however, refute this protest. The government opposed dismissal of the Third Superseding Indictment by insisting that it would prove Robinson to be an employee of the City of St. Louis and, hence, an agent thereof (Appendix 139, 140). Before defense counsel secured their mid-trial interview of Franks', the government repeatedly delved into Robinson's personnel file in an attempt to establish he was an employee of the City of St. Louis, *see, e.g.,* Tr-Vol-4 201-202, 203-204, 216, 223-224. The government asked no witness about Robinson's authority to act as an agent, or refer to agency principles until after Defense Counsel notified the prosecutor that their interview with Richard Frank confirmed Robinson not to be a City employee. (Tr-Vol-5 8-9).

The government's brief backpedals to cite testimony it developed prior to its eleventh hour shift to agency, wherein it outlined medical, dental, life insurance, disability insurance and retirement benefits offered to full time Parking Division employees. (Appellee's Brief 29-30). This evidence does not aid the government, first, because these benefits existed as "group" programs that workers at other

Appellate Case: 13-3253    Page: 10    Date Filed: 05/02/2014 Entry ID: 4150195

governmental offices were permitted to take part without making them St. Louis City employees. (Tr-Vol-6 146-148). Second, Robinson did *not* qualify for these benefits as an hourly employee. (Tr-Vol-5 60, 72). The government confuses the record in claiming Robinson was "paid by the City, out of its main clearing account with funds belonging to the City." (Appellee's Br. 29). Parking Division salaries come from meter revenues, not City tax revenues. (Tr-Vol-5 28, 110; Tr-Vol-6 12).

The government points to Richard Frank's testimony that Robinson was authorized to act as a public servant serving the people of the City and inaccurately describes his opinion that Robinson constituted an agent authorized to act on the City's behalf. (Appellee's Brief 30). To the contrary, Frank explicitly qualified the basis of his testimony about Robinson's agent status and authority to act on another's behalf as referring to the "City of St. Louis" which he defined as "the boundary and all the citizens encompassed in the City of St. Louis," (Tr-Vol-6 156-57, 158-60, 165, Addendum 126-27). The government erroneously labels Frank's testimony about Robinson's authority to act on behalf of the City "uncontradicted." (Appellee's Br. 31). Robinson objected to the propriety of this testimony (Tr-Vol-6 149-150; Point II, *infra*). He also established through Frank and other witnesses that Parking Division employees do not work for the City of St. Louis municipal government and that their salaries are paid for by parking

11

meter revenues rather than City tax funds, notwithstanding the sharing of payroll services and access to group benefits procedures. (Tr-Vol-5 110; Tr-Vol-6 142-144, 148, 165).  The government's reference to Robinson's eligibility for worker's compensation from the City or for representation by the City Counselor's Office for claims against him in any suit also failed to establish that his work for the County Office collecting meter revenues pursuant to state statute made him an agent of the City government – particularly in light of the fact no such compensation or claims against Robinson occurred.  (Tr-Vol-6 156).

At pages 30-31 of its brief, the government denies Robinson's contention that its manipulation of the terms "agency" and "City of St. Louis" misled the district court to disregard §666(a)'s requirement that the defendant be an agent of the governmental entity receiving federal funds.  In fact, the very grounds the government cites in denial prove the effectiveness of its semantic maneuvering in misleading the district court about that element.  Appellee's brief cites (1) the district court's finding that "the City" had been the recipient of the federal grant funds, (2) the judge's finding that the government presented "sufficient information" to support a jury finding that Robinson was authorized to act on behalf of the city and was an agent of the city during each of the years charged, and (3) the court's reference to Defense Exhibit K, entitled "The Government of the City of St. Louis," listing various offices "making up the City's government,

12

"*including* the Parking Division, as manually added by Robinson's counsel during questioning of the City's Personnel Director." (Appellee's Br. 31-32).

First, the "sufficient information" the judge deemed adequate to establish Robinson's authority to act on behalf of the City rested on Frank's opinion of his agency as an employee whose work benefitted "the borders and all the citizens encompassed in the City of St. Louis," and explicitly did *not* prove Robinson or other employees of other county offices acted as agents on behalf of the municipal government headed by Mayor Slay that received the federal funds. (Tr-Vol-6 165.) Second, the district court's reliance on the caption "Citizens of St. Louis" atop the diagram of multi-jurisdictional government offices serving them proves the prejudicial effectiveness of Frank's non-statutory analysis of agency. *Id.* In fact, the chart itself illustrated the *separation* of state and county offices from the Municipal City Government. Municipal government offices appear in two boxes on the diagram -- one containing the Mayor, the Comptroller, and the President of the Board of Alderman and the other rectangular box connected by a line drawn from the Mayor's office in which all other City government offices appear. (Addendum 120; Tr-Vol-6 143-145, 168, 170, 173). The Parking Division like the other county government offices appears in neither box. (*Id.*)

13

B.    No agency nexus existed between the Parking Division (a County agency) and the municipal Government that received HUD benefits.

Appellee's brief perpetuates its non-statutory analysis of agency and it's nonsensical interpretation of Exhibit K by claiming that the 8½-by-11 inch chart demonstrates a "direct and close 'nexus' to the 'Government of the City of St. Louis, Missouri,' answerable to the 'Citizens of St. Louis.'" (Appellee's Br. 32). Again, the Citizens of St. Louis do not constitute the "organization, government, or agency" receiving the prerequisite federal funds, and the chart illustrated the separate nature and levels of these offices, not a nexus between their functions. (Addendum 120; Tr-Vol-6 143-145, 168, 170, 173).

The government next offers conflicting arguments, first insisting that "the issue is not whether the Treasurer's office has the required agency nexus to the City of St. Louis, but whether Robinson did" (Appellee's Br. 32-33), but then insisting that because the Treasurer's Office manages bank accounts for the City of St. Louis, workers within the state-created Parking Division must also be agents of the City. (*Id*. at 33). The government cites an exhibit not introduced at trial, consisting of a City webpage describing the Treasurer's Office management of City banking accounts as providing a "check and balance against the Comptroller's Office" the latter office being part of the Mayor's municipal government. (Appellee's Br. 33, citing DCD#72, Exh. 1 [Appx. 60]). At trial, the only evidence of any investment function in the Treasurer's Office came from Curtis Royston

14

who demanded that Robinson specify which division of the Treasurer's Office his questions related to because the side of the Treasurer's Office managing banking functions existed separately from the side encompassing the Parking Division. (Tr-Vol-5 134, 135).

Far from supporting Robinson's conviction, the facts and ruling in *United States v. Petty*, 98 F.3d 1213 (10th Cir. 1996), directly bolsters Robinson's claim that he lacked an agent relationship with the government receiving federal funds. In *Petty*, the Tenth Circuit rejected arguments by an Assistant State Treasurer, Whitehead, that the Federal Program funds her office processed went to other state agencies rather than the Treasurer's Office. The Tenth Circuit concluded that Whitehead indisputably constituted an agent of the State government which received over $10,000 in federal money, and that she invested the state's moneys as part of her job even if her office did not ultimately receive the money. *Id.,* at 1219. *Petty* bears no semblance to this case.

The government purports to distinguish *United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000), on the false and self-serving speculation that the Louisiana assessor's office in *Phillips* must not have been authorized to act on behalf of the Parish government that received the funds, the way the Treasurer's office was in this case. (Appellee's Br. 34). To the contrary, the opinion indicates that the assessor's office used the alleged ghost employees to look for and "spot" signs of

Appellate Case: 13-3253    Page: 15    Date Filed: 05/02/2014 Entry ID: 4150195

new construction or property improvement that would increase the property's assessed value for tax revenue purposes. *Id.* at 408. As in Robinson's case, however, Phillips' actions did not and could not have threatened the integrity of the federal Food Stamp benefits received through the Parish government because he was neither an employee or an officer. *Id.* at 413. The government's refrain that this Court does not require a nexus "between [the defendant's conduct] and the federal funds," confuses the point. (Appellee's Br. 34, citing *United States v. Hines*, 541 F.3d 833 (8th Cir. 2008)). *Hines* simply reiterated that bribery did not have to actually impact federal program money to be actionable under §666(a). It did not hold that §666 encompasses fraud by an employee of one governmental entity that does not receive federal program money simply because a distinct governmental entity serving the same population does receive federal money. The defendant must have an agency relationship with the recipient of federal funds, because §666(a) does not exist to federalize any misconduct of local officials – a point the government refuses to acknowledge. *See Fischer v. United States*, 529 U.S. 667, 681 (2000); *Phillips*, 219 F.3d at 413.

C. §666(a)(1)(A) violates the Tenth Amendment as applied to Robinson.

The government's summary contention that §666(a)(1)(A) is constitutional as applied under the Spending Clause and the Necessary and Proper Clause does not address appellant's argument. The government does not answer the Supreme

Appellate Case: 13-3253     Page: 16     Date Filed: 05/02/2014 Entry ID: 4150195

Court's warning in *Fischer* about construing the statute in ways that upset the state and federal balance, nor the other cases indicating that the Spending Clause does not license Congress to enact criminal laws to prosecute fraud in one department of a city when the federal funds providing jurisdiction go to a totally unrelated department. *See United States v. Santopietro,* 166 F.3d 88, 93-94 (2nd Cir. 1999).

2.  The District Court Erroneously Admitted a Lay Witness's Legal Opinion on the Ultimate Issue of Whether Robinson was an agent of St. Louis City

The government improperly elicited Richard Frank's legal opinion that Robinson served as an "agent" of the City of St. Louis, based on a non-statutory definition requiring only that his work benefited residents within that City's borders. This improper legal opinion invaded the province of the jury to decide the ultimate issue of whether Robinson worked as an agent of the governmental agency receiving federal funds, which §666(b) requires. As the only proof the government cited to establish this necessary element on five of eight counts (Tr-Vol-7 88-89), Frank's opinion decisively misled the jury into finding agency based on an erroneous definition that fell short of the law's requirements.

Contrary to the government's claims, neither Frank's prior testimony that Robinson was not an "employee" of the City, nor Frank's position as Director of Personnel authorized the use of this incompetent opinion. First, as a lay witness, Frank could offer only those opinions "rationally based on [his] perception," Fed.

Appellate Case: 13-3253   Page: 17   Date Filed: 05/02/2014 Entry ID: 4150195

R. Evid. 701, which may include knowledge based on "industry experience."
*United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010). As Personnel Director,
Frank testified that he administered the City's civil service employees, making him
"familiar with how we interpret who is and who is not an employee." (Tr-Vol-6
141). That background formed the basis for Frank's opinion that Robinson was
not a City civil service employee – a question of fact elicited from a lay witness
based on his own perception as Human Relations Director for the municipal
government. (Tr-Vol-6 148). In contrast, Franks admitted having no knowledge
of Robinson's employment in the Parking Division (Tr-Vol-6 149), and had no
basis in his personal knowledge from which to opine about his agency.

Moreover, Frank's opinion about Robinson's agency under a non-statutory
definition of the term bore no relationship to his own powers of perception,
because "agent," as defined in §666(d)(1), has "a separate, distinct, and special
legal meaning." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987).
Every level of federal court derides legal conclusion testimony because it invades
the province of the court to instruct jurors on the applicable law, *United States v.
Smith*, 573 F.3d 639, 655 (8th Cir. 2009), and invites jurors to "accord too much
weight to the pronouncement of a lay witness unfamiliar with the standards erected
by criminal law," *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981).
Further, Frank's testimony purported to resolve an ultimate issue, invading the

18

province of the jury by starkly asserting it should reach a particular result, rather than allowing jurors to weigh the evidence and draw inferences on their own. *See United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993).

The government's third justification – that Frank's opinion testimony was admissible because it was helpful to the jury – utterly fails. Rather than help jurors, Frank's opinion misled them as to the legal definition of agency required for conviction. Frank did not opine that Robinson's work made him an agent for the local government of St. Louis receiving federal program money from the Department of Housing and Urban Development, as charged in the indictment and required by §666(b). *Peery*, 977 F.2d at 1232. Rather, Frank testified that an agent is someone who works on behalf of someone, and that because Robinson's parking meter work provided benefits to the City of St. Louis, he was an therefore an "agent of the City of St. Louis." Frank's opinion of agency equated the "City of St. Louis" with "the people of the City of St. Louis" (Tr-Vol-6 157), the "boundary and all the citizens encompassed by the City of St. Louis" (Tr-Vol-6 165), not the local government headed by Mayor Slay that received the federal program funds. (Tr-Vol-6 165; Add. 127). Frank's opinion was not helpful, but critically misled the jury regarding the proper legal standard for agency.

Finally, the government offers a bare conclusion that the error was harmless in light of rest of the evidence. Its brief makes no attempt to justify that conclusion

Appellate Case: 13-3253    Page: 19    Date Filed: 05/02/2014 Entry ID: 4150195

because the record cannot support it. The prosecutor spotlighted Frank's testimony as the "only evidence" the jury heard on the element of agency (Tr-Vol-7 87), and then repeated Frank's inaccurate understanding of the term as someone who provides a service to "the people of the City of St. Louis." (Tr-Vol-7 88-89). "[W]hat Mr. Frank told you, the only evidence you've heard. That's the law." (Tr-Vol-7 89). In fact, "that" is *not* the law. Frank's opinion misled the jury using a non-statutory definition of agency, which the government repeatedly emphasized in summations. Far from being harmless, this prejudicial error provided the decisive basis the government cited to prove an essential element in Counts IV-VIII. The government used Franks in a last ditch effort to resurrect a case doomed to fail despite four successive indictments trying to contort a federal statute to encompass the very type of factual scenario Congress never intended it to reach.

3.     The district court committed instructional error by

    A.     Refusing to Give Either Theory of Defense Instruction D or E that if the jury did not find Defendant to be an agent of the entity receiving federal funds, it must acquit him of Counts 4-8.

The government employs wordplay to dismiss Robinson's need for an instruction to preclude wrongful conviction from the jury's misapplication of Frank's non-statutory definition of Robinson's agency with the City of St. Louis defined as the residents living within the city instead of the statutory requirement

Appellate Case: 13-3253    Page: 20    Date Filed: 05/02/2014 Entry ID: 4150195

that he worked on behalf "of the government or agency" receiving federal funds. *Peery*, 977 F.2d at 1232. Appellee posits that Instructions D and E should have used the term "government" instead of the term "agency," yet the district court's own instructions defined government to include "any agency thereof." (Tr-Vol-7 17 (paraphrasing §666(a)(1)). Neither instruction D nor Instruction E misstated the law. The government otherwise repeats the district court's misreading of *United States v. Hines*, 541 F.3d 833 (8th Cir. 2008), as standing for the proposition that a defendant need not be an agent of the department that received federal program funds to be culpable under §666(a). (Appellee's Brief 39-40, quoting Tr-Vol-7 8). As Robinson's initial brief explained, Hines did not argue that he was not an employee or agent of the government that received the federal funds that provided jurisdiction for his federal prosecution. *Hines* merely reiterated that §666(a)(1)(B) did not require a showing that bribes involved or impacted federal program money. *Id*. at 835-36. The government simply refuses to address appellant's argument.

> B)    Denying Instruction C that to be an agent of the City, one must have authority to act on its behalf with respect to its funds, and instead giving instructions 22 and 15.

The government again refuses to address the impact of Frank's improper opinion testimony about Robinson's agency based on a non-statutory definition of agency encompassing anyone rendering benefits to residents within the geopolitical boundaries of the City of St. Louis. (Tr-Vol-6 147, 165). The

Appellate Case: 13-3253    Page: 21    Date Filed: 05/02/2014 Entry ID: 4150195

government's conflation of public service benefiting St. Louis City citizens with the "agency" §666(b) requires with a governmental entity receiving federal funds constitutes a critical part of the context in which Robinson's request for Instruction C – and the inadequacy of Instruction 22- must be evaluated. *United States v. Whitehill*, 532 F.3d 746, 752 (8th Cir. 2008). Appellee's brief simply ignores it.

However adequate Instruction 22 might have been in a trial lacking such misleading and false evidence of agency, in the context of this trial the instruction fed the misleading and mistaken notion that mere work benefitting City residents satisfied the agency element needed for conviction. *Hines* does not stand for the proposition that §666 can reach any government employee who misappropriates purely local funds, without regard to how organizationally removed the employee is from the particular agency that administers the federal program. *See United States v. Phillips*, 219 F.3d at 411. Instruction C did not require a finding that the offense conduct had an impact on the federal funds. The problem in this trial resulted from the government's prosecution of a man who served neither as an agent nor an employee of the government agency receiving the federal monies – a statutory element the government wrongly, but effectively, blurred. *Peery*, 977 F.2d at 1232.

Appellate Case: 13-3253    Page: 22    Date Filed: 05/02/2014 Entry ID: 4150195

4.      The Court admitted GPS evidence in violation of the Fourth Amendment.

<u>Reasonable suspicion fails to justify warrantless, prolonged GPS tracking</u>

Reasonable suspicion presents too weak a threshold to grant government agents license to link unsuspecting motorists to prolonged global satellite tracking without a neutral magistrate's review. The government fails to engage Robinson's argument that no special needs of law enforcement justify warrantless GPS tracking and the covert accumulation of voluminous data about one's comings and goings. This betrays a tacit admission of the merit in Robinson's point. (Appellee's Br. 38-42).

The Orwellian leap the government proposes by adding prolonged satellite tracking as an ordinary preliminary investigative tool gets no support from the Supreme Court cases cited in Appellee's Brief at 47. Those cases uphold warrantless searches of brief duration and limited scope, or involved persons or places having less Fourth Amendment protection than the general public. *United States v. Knights*, 534 U.S. 112, 119 (2001) (probationers "do not enjoy 'the absolute liberty to which every citizen is entitled'"; Knight voluntarily accepted probation conditioned on warrantless searches); *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) (school officials and teachers do not need warrants to search students they suspect to be violating criminal laws or mere rules of the school).

Appellate Case: 13-3253     Page: 23     Date Filed: 05/02/2014 Entry ID: 4150195

The other cases the government cited stress the short-term and limited scope of permissible warrantless searches. "The brevity of the invasion of an individual's interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696, 710 (1983) (90 minute detention of suitcase exceeded permissible limit for a brief investigative stop and required probable cause). *See also United States v Jones*, 132 S.Ct. 945, 961 (2013) (Alito, J., concurring) ("what is really important" in the Fourth Amendment analysis is "the use of GPS for the purpose of *long-term tracking*", emphasis added).

Nor does *Maryland v. Buie*, 494 U.S. 325 (1990), help the government. Police had a warrant to arrest *Buie* for armed robbery, which in turn provided constitutional authority for an otherwise impermissible intrusion into his home, *id.* at 330. From that warrant, the Court drew a limited authority of arresting officers to perform a "quick and limited," "cursory visual inspection" of areas immediately adjacent to the place of arrest from which a third party might attack them. *Id.*, at 327. Furthermore, the government's citation to the 1970s proposition that one holds a diminished expectation of privacy in a vehicle (Appellee's Br. 47) ignores the quantum leap in electronic surveillance in the intervening 40 years. *See Jones*, at 963 (Alito, J., concurring) ("technology can change those expectations [of privacy]."). "[S]ociety's expectation has been that law enforcement agents and

Appellate Case: 13-3253    Page: 24    Date Filed: 05/02/2014 Entry ID: 4150195

others would not – and indeed, in the main, simply could not secretly monitor and catalogue every single movement of an individual's car for a very long period." *Jones*, at 964 (Alito, J., concurring).

Furthermore, the evidence here failed to establish reasonable suspicion. The government points to the speculative accusations made by three of four ex-employees of the Treasurer's Office who did not think Robinson worked for his pay, but fails to address Agent Comeau's admission that she did not seek even basic corroboration -- like determining when Robinson was supposed to work – or the fact that one of the coworkers stated that Robinson performed Parking Division work at night (Addendum 129). Comeau plainly admitted her early resort to the GPS tracking "was more focused just on collecting the information. I did more of the corroboration afterwards, after the tracker was finished." (Addendum at 32). The deliberate choice of these law enforcement officials to avoid a magistrate's likely denial of GPS monitoring based on meager, uncorroborated accusations from biased sources illustrates dangers Justice Sotomayor foretold when she observed that covert GPS makes it possible to "evad[e] the ordinary checks that constrain abusive law enforcement practices[.]" *Jones*, 132 S.Ct. at 956 (Sotomayor, concurring). Even if reasonable suspicion sufficed to justify satellite surveillance, the uncorroborated and conflicting claims of disgruntled ex-coworkers prejudiced against those (like Robinson) who kept their jobs, negated its

Appellate Case: 13-3253     Page: 25     Date Filed: 05/02/2014 Entry ID: 4150195

existence here.  The government cites no case upholding a finding of reasonable suspicion based on such uncorroborated and self-interested sources.

<u>The Judge's denial of good faith reliance anticipated *Barraza-Maldonado*</u>

This Court's intervening ruling in *United States v. Barraza-Maldonado* vindicated the District Court's rejection of the "good faith" exception due to the lack of binding authority from this Court authorizing such prolonged and warrantless surveillance. 732 F.3d 865, 867 (8th Cir. 2013).  "For the good faith exception to apply, officers performing a particular investigatory action – such as GPS tracking – must strictly comply with binding appellate precedent governing the jurisdiction in which they are acting."  *Id*. at 867, *citing Davis v. United States*, 131 S.Ct. 2419, 2428 (2011), among other authorities.  In *Barraza-Maldonado*, the Arizona police who attached the warrantless GPS device prior to *Jones* relied on multiple Ninth Circuit opinions declaring that this did not constitute a search under the Fourth Amendment. *Id.*

*Barraza-Maldonado* refutes the government's reliance on *United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010), decided on May 21, 2010 – four months after Comeau's team began extracting immense amounts of data from Robinson's car on January 22, 2010 and more than two months after they stopped it on March 17, 2010 (Tr-Vol-6 23, 67).  *Barraza-Maldonado* constitutes binding precedent by

Appellate Case: 13-3253    Page: 26    Date Filed: 05/02/2014 Entry ID: 4150195

a prior panel and controls the analysis in this case. *United States v. Cornelison*, 717 F.3d 623, 628 (8ᵗʰ Cir. 2013).

      The government's resort to non-Eighth Circuit decisions that found GPS not to constitute a search or seizure prior to January 2010 tacitly concedes the lack of any binding authority in this Circuit when Comeau and her team began their two month data collection by satellite tracking of Robinson's car. (Appellee's Br. 49-50). Contrary to the government's contention, no Supreme Court precedents before *Jones* justified their strategy. All of the Justices agreed in *Jones* that the Court need not overrule either *United States v. Knotts*, 460 U.S. 276 (1983), or *United States v. Karo*, 468 U.S. 705 (1984), to conclude that implanting a GPS device on a motorist's car and monitoring it for 28 days constituted a search. *Jones*, 132 S.Ct. at 951-52 (majority opinion); *id*. at 964 (Alito, J., concurring). Law enforcement did not use the beepers in *Knotts* and *Karo* for long-term tracking, the beeper devices generated limited and imprecise data, and their installation did not require physical trespass. In Robinson's case, by contrast, the covert surveillance of his car lasted *twice* as long as in *Jones*. *Knotts* and *Karo* did not stand for the proposition that attaching GPS devices did not constitute a search, as conclusively proved by the fact *Jones* did not overrule either of those cases. *See also Jones*, at 964 (Alito, J., concurring) (citing societal expectation that law

Appellate Case: 13-3253    Page: 27    Date Filed: 05/02/2014 Entry ID: 4150195

enforcement agents would not and could not secretly monitor and catalogue every single movement of an individual's car for a very long period.").

The investigative conduct in this case refutes the government's contention that application of the exclusionary rule would fail to deter future Fourth Amendment violations. Agent Comeau admitted the authorities did not try to corroborate the inconsistent accusations by Robinson's disgruntled ex-coworkers, but simply focused on collecting information, leaving corroboration of their undetailed complaints for "afterwards, after the tracker was finished" some 55 days later (Addendum at 32). She conceded that her minimal investigation before installing the GPS tracker did not establish when Robinson was supposed to work, and the meager interviews suggested that Robinson did night work, negating the value of the minimal personal surveillance she engaged in beforehand (12-1-2011-Hearing 31; Addendum 129). Rather than face a magistrate with such sketchy and questionable leads, Comeau and her team consulted Assistant United States Attorney Goldsmith, who advised them not to seek a warrant (4-12-2012-Hearing 45-46; Addendum 68). Far from supporting the government, this chain of events demonstrates the government's apparent belief it can provisionally write circuit law in an unresolved area even when the agents should have sought a warrant.

Application of the exclusionary rule here produces substantial and essential deterrence to prevent investigators and the prosecutors who advise them from

Appellate Case: 13-3253    Page: 28    Date Filed: 05/02/2014 Entry ID: 4150195

acting in a constitutionally reckless fashion based on overly zealous interpretations of non-binding case law.  United States Attorneys constitute "adjuncts to the law enforcement team."  *United States v. Leon*, 468 U.S. 897, 917 (1984).  They comprise "the chief federal law enforcement officer of the United States within his or her particular jurisdiction."  Mission, Offices of the U.S. Attorneys, U.S. DOJ, http://www.justice.gov/usao/about/mission.html.  Like the investigators serving them, United States Attorneys "engaged in the often competitive enterprise of ferreting out crime," *Leon*, 468 U.S. at 913-14 (internal quotation marks and citations omitted), and stand amongst the groups to be deterred by the exclusionary rule from constitutional violations. *See, id.* at 918 (The exclusionary rule must alter behavior of individual law enforcement officers or "the policies of their departments.")

Although "the benefits of deterrence must outweigh the costs," *United States v. Herring*, 555 U.S. 135, 141 (2009), minimal costs result here and they are far outweighed by deterring unwarranted yet pervasive electronic spying for prolonged periods.  The government often retains the ability to obtain a warrant when the law is unresolved.  No basis exists to expect that applying the exclusionary rule in this case, where the facts squarely call for it, will appreciably increase the frequency of its use.  Admission of the improper evidence requires reversal of all counts.

Appellate Case: 13-3253     Page: 29     Date Filed: 05/02/2014 Entry ID: 4150195

5.    <u>Improper joinder and denial of severance</u>.

In essence, the government just recites the district court rulings without engaging Robinson's arguments or authorities.  The government exaggerates the temporal overlap between the two schemes, a minimal basis for joinder by itself. In fact, the Paideia offense conduct (between April 17, 2009 and November 10, 2010, Appx. 94) only partially overlapped in time with two of the five Parking Division counts.  That Paideia witnesses and Parking Division witnesses testified to their ignorance of Robinson's involvement with the other entity hardly presents the kind of evidentiary overlap justifying joinder or denial of severance.  Only former Parking Division worker Curtis Royston gave testimony referring in any detail to Robinson's Paideia-related work, and it predated the Paideia offense conduct that purportedly originated in 2009. (Tr-Vol-5 123, 127-28; Appx. 94).

The government echoes the district court's citation of *United States v. Garrett*, 648 F.3d 618 (8th Cir. 2011), but fails to answer the lack of support provided by that case – in which identical proof established the same element of both crimes --  to justify joining two cases consisting of qualitatively dissimilar offense conduct.  The government does not refute the clear applicability to this case of the finding of improper joinder of two distinct forms of fraud in *United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996).  The government simply avoids mentioning it.

Appellate Case: 13-3253     Page: 30     Date Filed: 05/02/2014 Entry ID: 4150195

The new cases the government cites on appeal do not help it out either, as both cases involved identical charges based on virtually identical conduct. The Sixth Circuit case of *United States v. Hang Le-Thy Tran* involved arsons of two beauty-related businesses Tran owned and operated, both set on fire using accelerant chemicals used in the businesses, and in each case Tran filed insurance claims to reimburse new equipment she purportedly delivered just prior to each fire. 433 F.3d 472, 477-78 (6th Cir. 2006). The identical nature of *Tran*'s arsons highlights the sharp dissimilarity of offenses here – one defined by executive overreach and purported misuse of education funds to build a for-profit pre-school, whereas the other consisted of a parking meter employee turning in time sheets falsely documenting his work hours. Two qualitatively disparate crimes may not be joined simply because both may broadly be said to involve deceit. *Randazzo*, 80 F.3d at 628.

In *United States v. Nettles*, the defendant explicitly conceived and described two related plans "to generate counterfeit money and use it to finance his bomb plan" to blow up a federal building in Chicago, making evidence of each intertwined crime probative and admissible in a separate trial of the other. 476 F.3d 508, 511, 516 (7th Cir. 2007). No such intertwining existed between the offenses charged here. The government does not deny (or even mention) appellant's point that, although the hours he spent at Paideia may be relevant to show he did not at

31

those times survey parking meters, the fraudulent acts alleged at Paideia brought no added probative value in establishing his omissions as a ghost employee, but, instead, invited the jury to dismiss doubts in the case based on his propensity to commit a variety of crimes. Appellant's Br. 47.

The government again resorts to mere repetition of the district court concerning the denial of severance based on the meager overlap of time between charges relating to the two schemes plus the district court's unsupported conclusion that the Parking Division scheme would have been admissible other crimes evidence in the Paideia Scheme and vice versa. The government cites no authority that supports admissibility of the Treasurer's Office charges in the Paideia Scheme. The only case it cites, *United States v. Davis*, involved joinder of armed bank robberies barely two months apart, 103 F.3d 660, 664 (8th Cir. 1996). The opinion in *Davis* does not suggest either robbery differed in its nature or modus operandi – in fact, in each robbery the gunman work a dark stocking cap or mask and used a dark-colored gun. *Id*., at 664-65. This Court reasoned that Davis's defense of mistaken identity as to each of the robberies, made the others admissible to establish identity. No similar justification rendered the Parking Division offenses admissible to prove executive manipulation at Paideia Academy.

The government summarily asserts that the trial court rendered the improper joinder harmless error, making no acknowledgment – much less a rebuttal – of the

32

district court's failure to recognize the variety of ways joinder prejudiced Robinson and the inadequacy of the court's instructions to prevent such prejudice. Appellant's Brief 49-50.

6.  The *Batson* challenge.

Defense counsel cited proof of pretext in the government's claim that it struck black venire member 26 for being unemployed, that being the prosecutor's retention of white juror 7 for whom the jury sheet listed no *current* employment (Tr-Vol-1 175). The government's complaint that *defense counsel* failed to ask venire member 7 about his employment (Appellee's Br 61) begs the question of why the *prosecutor* did not ask Juror 7 himself, if, as he claimed, he wanted to avoid unemployed jurors. The judge's remark that she did not know whether Juror 7 was employed confirmed that the jury sheet did not answer this question as to Juror 7. (Tr-Vol-1 176). If the jury sheet left the court with no idea of Juror 7's current employment status, the prosecutor should have been pursuing the subject himself. The racially disparate pattern with which the prosecutor acted on this purported concern established pretext that the record did not refute and compelled reversal to vindicate Robinson's equal protection right to a jury not selected based on the government's exclusion of jurors of his race. *Miller-El v. Dretke*, 545 U.S. 231, 249 (2005).

Appellate Case: 13-3253    Page: 33    Date Filed: 05/02/2014 Entry ID: 4150195

7. The Court's choice of sentence punished Robinson's failure to confess

The government refuses to face the plain meaning of the District Court's words as it recounted a list of incriminating facts Robinson failed to admit as the basis for denying probation. (Sent. Tr. 74-75). The government does not cure the error by recasting these statements as citing "lack of remorse and failure to accept the jury's verdicts," both phrases being synonymous with failing to admit wrongdoing. (Appellee's Br. 62). Nor does the Constitutional error disappear by enshrouding the judge's focus on Robinson's failure to confess behind the labels "deterrence" or "protection of the public from future crimes." (Appellee's Br. 62-63). *See Nelson v. United States*, 555 U.S. 350, 352 (2009) (that the district court noted the Sentencing Guidelines were not mandatory was "beside the point" that it also called them presumptively reasonable); *United States v. Panice*, 598 F.3d 426, 442 (7th Cir. 2010). The District Court's dominating critique of Robinson's failure to confess formed its principal basis for denying probation compels resentencing. *United States v. Willie Frank Stokes*, No. 13-1779, Slip Opinion at 8 (8th Cir., April 29, 2014) (judge's unsupported conclusion Stokes sold drugs, which became its principal basis for denying a downward departure, required remand).

The government gets no help from *United States v. Overbey*, 696 F.3d 702 (8th Cir. 2012). Overbey gave a rifle he used in a robbery to his son to eliminate it. At sentencing, the judge rebuked Overbey for the emotional torment the son

Appellate Case: 13-3253     Page: 34     Date Filed: 05/02/2014 Entry ID: 4150195

suffered while testifying at trial "because his father wouldn't man up and admit that he was guilty".  Overbey did not challenge the district court's remarks as punishing his Fifth Amendment exercise. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507 (1925), cited in *United States v. Bruguier*, 735 F.3d 754, 765 (8th Cir. 2013). A district court's reliance on an unconstitutional basis for imprisoning a defendant renders a below-guidelines sentence unreasonable just as it would a sentence above or within the guidelines.  *See Gall v. United States*, 552 U.S. 38, 51 (2007) (abuse of discretion standard applies whether sentence is inside or outside the guidelines).  The questionable proposition that unreasonable below-guideline sentences are "inconceivable" cannot provide safe harbor for punishing a defendant's exercise of a constitutional right.

8.     DESE's Restitution

The government does not address or refute Robinson's argument that granting DESE restitution for money it spent on approved expenditures constitutes double recovery.

Appellate Case: 13-3253     Page: 35     Date Filed: 05/02/2014 Entry ID: 4150195

Respectfully submitted,

/s/ Diane Dragan
DIANE DRAGAN
Assistant Federal Public Defender

and

/s/ Felicia Jones
FELICIA JONES
Assistant Federal Public Defenders
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177

ATTORNEYS FOR DEFENDANT-APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Hal Goldsmith, Assistant United States Attorney.

/s/ Diane Dragan
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(b), the undersigned hereby certifies that this Brief complies with the type-volume limitation. The number of words contained in this Brief (excluding the cover, tables of contents and authorities and these certificates pursuant to Fed. R. App. 32(b)(iii)) typed in Word is 6,949.

/s/ Diane Dragan
Assistant Federal Public Defender

Appellate Case: 13-3253     Page: 36     Date Filed: 05/02/2014 Entry ID: 4150195